**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Sandra Spaise SHIRLEY,
Defendant–Appellant.**

No. 88–3087.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 2, 1989.

Memorandum May 16, 1989.

Opinion Corrected and Issued
Aug. 24, 1989.

Susan E. Reese, Reese & Goffredi, Portland, Or., for defendant-appellant.

Leslie K. Baker, Asst. U.S. Atty., Portland, Or.; Charles H. Turner, U.S. Atty. D. Or., Portland, Or., for plaintiff-appellee.

Before TANG, BOOCHEVER and KOZINSKI, Circuit Judges.

BOOCHEVER, Circuit Judge:

## OVERVIEW

Sandra Shirley (Shirley) appeals her conviction for conspiracy to facilitate an escape, aiding and assisting in an escape, harboring an escaped federal prisoner, illegal possession of firearms, using a telephone and the mails to facilitate possession with intent to distribute heroin and cocaine, and possession with intent to distribute controlled substances. On appeal, Shirley urges numerous errors which we will address in the order she has presented them. We have jurisdiction pursuant to 28 U.S.C. section 1291, and we affirm.

### I. *Irving Burkett's Testimony*

Shirley contends that the district court's decision to allow former prison guard Irving Burkett to testify for the government was an abuse of discretion.

Burkett was shot in the head during the escape, causing him to suffer a permanent disability which Shirley argues was readily apparent to the jury. Burkett's speech was slurred, he had difficulty using his left arm and testified from a chair next to the jury instead of from the witness stand. Shirley contends that the district court should have excluded this evidence under Fed.R.Evid. 403, as its prejudicial effect outweighed any probative value since Burkett testified about the same matters as another guard.

■■■ We review a district court's decision to exclude evidence under Rule 403 for an abuse of discretion. *See United States v. Layton,* 767 F.2d 549, 553 (9th Cir.1985). Even if the district court erred in admitting the evidence, that error is subject to the harmless error rule. *See United States v. Rubio,* 727 F.2d 786, 798 (9th Cir.1983), *as modified* (1984).

Even if we assume that it was error to permit Burkett to testify, the error was harmless beyond a reasonable doubt. The jury was aware that a guard had been shot in the head during the escape. If Burkett had not testified, the jury may well have considered his injury even more serious.

■■ Shirley also contends that the district court erred by not specifically asking the jury if a sympathetic newspaper photograph of Burkett at trial discovered in the jury room influenced them. When two newspapers containing the photograph were found in the jury room Shirley objected and asked the district court to voir dire the jury about the paper's impact. The judge reminded the jurors not to "read, listen to or watch any account of these proceedings which may appear elsewhere," and asked the jury if anyone had failed to obey the court's instructions. The trial judge noted "I see no hands raised."

■■ Ordinarily, jury misconduct is grounds for a mistrial. Shirley, however, does not argue that a mistrial was appropriate. Instead, she raises the alleged jury misconduct to support her prejudice argument. This argument is without merit for two reasons: (1) the district court's finding that the jurors obeyed its instruction concerning outside information about the trial was not clearly erroneous and (2) even if the jurors had seen the newspaper photograph, it does not follow that a photograph would elicit more sympathy for officer Burkett than the jurors' live observation of him as he testified.

II. *The district court's denial of Shirley's motion to subpoena prisoner witnesses at the government's expense under Fed.R.Crim.P. 17(b)*

■■ "A motion under Rule 17(b) is addressed to the sound discretion of the trial court, and a defendant does not have an absolute right to subpoena witnesses at government expense." *United States v. Sims,* 637 F.2d 625, 629 (9th Cir.1980) (citations omitted). Shirley contends that the district court erred by denying her motion for a writ of habeas corpus ad testificandum for federal prisoner Stephen Kessler under Rule 17(b). Shirley argues that Kessler's testimony was necessary for an adequate defense in her case and that the district court's refusal to allow Kessler to testify violated her Sixth Amendment right to compulsory process. *See United States v. Pardo,* 636 F.2d 535, 544–47 (D.C.Cir. 1980).

The trial judge held an *in camera* conference with counsel for Shirley, other defendants' counsel, the prosecution and Stephen Kessler, via telephone, to determine what Kessler would agree to testify to at trial. The record indicates that Kessler would corroborate Mr. O'Shea's and Mr. Gardner's testimony concerning the smuggling of the gun used in the escape into Rocky Butte jail and would testify to matters that would impeach two government witnesses. Kessler indicated that he was not willing to testify to a number of other events which would have been the subject of the prosecution's cross-examination.

The trial judge appeared to base his decision to deny Shirley's motion to produce Kessler on the determination that the prosecution's cross-examination of Kessler would be restricted. We would have some reservations affirming the district court's

**1133**

decision on this basis alone. *See Pardo,* 636 F.2d at 544. When the trial court does not make a specific finding of fact or conclusion of law, "we will uphold the result if there is a reasonable view of the evidence to support it." *United States v. Most,* 789 F.2d 1411, 1417 (9th Cir.1986) (citation omitted).

In *Pardo* the D.C. Circuit reversed the defendants' convictions, holding that the district court erred in denying the defendants' motion to produce a witness. The appellate court determined that on balance, the defendant's Sixth Amendment compulsory process right outweighed the government's need to cross-examine the witness effectively. Although the prosecution's cross-examination was restricted in *Pardo,* that court stated that the defendant's witness should have been allowed to testify because no other witness could supply exculpatory testimony and challenge the testimony of the government's sole witness. In addition, the government's cross-examination would not have been so restrictive as to foreclose the possibility of impeaching the defendant's witness. In *Pardo,* the court held that "where the rights of the defendant and the Government can be reconciled, the defendant's constitutional right to procure testimony in his favor must prevail." *Id.* at 544–545.

Kessler's testimony would have been cumulative since other witnesses impeached the two government witnesses referred to by Shirley and testified about smuggling the gun into Rocky Butte Jail. A district court's refusal to issue a subpoena under Rule 17(b) "is clearly appropriate ... when the testimony sought is cumulative." *Sims,* 637 F.2d at 629; *see also United States v. Henry,* 560 F.2d 963, 965 (9th Cir.1977). Considering this factor together with the restrictions on cross-examination, we conclude that the district court did not abuse its discretion.

■ Shirley also contends that she was precluded from calling James Anthony Gardner as a witness because the court refused to grant him immunity from prosecution. This argument is without merit because an accused is not entitled to compel a prosecutor to grant immunity to a potential witness. *United States v. Paris,* 827 F.2d 395, 399 (9th Cir.1987) (quoting *United States v. Trejo–Zambrano,* 582 F.2d 460, 464 (9th Cir.), *cert. denied,* 439 U.S. 1005, 99 S.Ct. 618, 58 L.Ed.2d 682 (1978)).

### III. *The DEA Agent's testimony and summary charts*

■ Drug Enforcement Agent Katherine Roush testified to establish a relationship between various telephone numbers associated with Shirley, Kessler, and the Crippses. Roush also compiled charts, which were admitted into evidence, detailing information about telephone calls made to and from the various numbers. Roush relied on information already admitted into evidence such as telephone records, rental records, jail records, and the testimony of various witnesses. Shirley contends that this information was improperly admitted as expert testimony under Fed.R.Evid. 702 and as a summary under Rule 1006.

■ The district court did not err in admitting the charts or Roush's testimony as summary evidence. The proponent of the evidence must demonstrate that the underlying materials upon which the summary is based are admissible. *See United States v. Meyers,* 847 F.2d 1408, 1412 (9th Cir.1988) (chart detailing the long distance calls made by various co-conspirators was properly admitted). Shirley does not contend that any of the underlying information was inadmissible, rather she contends that the evidence was cumulative because the underlying information was already admitted. Summary evidence, however, "can help the jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of the multitude of witnesses." *United States v. Lemire,* 720 F.2d 1327, 1348 (D.C.Cir.1983), *cert. denied,* 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984); *see also Meyers,* 847 F.2d at 1412 (the sequence of events was confusing and the chart contributed to the clarity of presentation). Finally, the district court specifically instructed the jury

that the charts were not evidence but were used only for convenience.

### IV. The district court's denial of Shirley's motion for acquittal on the firearms count

Shirley contends that the district court erred by denying her motion for a judgment of acquittal on count five of the indictment. We review a district court's denial of a motion for acquittal in the same manner as a challenge to the sufficiency of the evidence. *See United States v. Talbert,* 710 F.2d 528, 530 (9th Cir.1983), *cert. denied,* 464 U.S. 1052, 104 S.Ct. 733, 79 L.Ed.2d 192 (1984). Consequently, we review the evidence presented against Shirley in the light most favorable to the government to determine whether *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original); *see Talbert,* 710 F.2d at 530.

Shirley was charged with being an ex-felon in possession of firearms. Shirley challenges only the evidence on the element of possession of the firearms. The element of possession may be satisfied by proof of constructive or joint possession. *United States v. Soto,* 779 F.2d 558, 560 (9th Cir.), *modified on other grounds,* 793 F.2d 217 (9th Cir.1986), *cert. denied,* 484 U.S. 833, 108 S.Ct. 110, 98 L.Ed.2d 70 (1987). " '[T]o establish constructive possession, the government must produce evidence showing ownership, dominion, or control over the contraband itself or the premises or vehicle in which contraband is concealed.' " *Id.* (quoting *United States v. Ferg,* 504 F.2d 914, 916–17 (5th Cir.1974)).

There was sufficient evidence that Shirley had constructive possession and control over the firearms. Willis testified that Shirley told him to obtain the guns and where to leave the car and guns. Willis put the guns in the trunk of a 1973 Dodge and put the keys in the ashtray. Shirley knew where the car and guns were located. A rational jury could find that Shirley had dominion and control of the firearms obtained by Willis at her request. *See United States v. Smith,* 795 F.2d 841, 849 (9th Cir.1986), *cert. denied,* 481 U.S. 1032, 107 S.Ct. 1964, 95 L.Ed.2d 535 (1987) (knowledge of the presence of contraband is necessary to determine whether defendant had sufficient dominion and control over the weapon to find constructive possession).

Shirley's main contention is that somehow the jury had to recognize that Willis was "discredited and impeached" and therefore his testimony should have been disregarded. The decision whether to believe a witness is within the province of the jury. We conclude that a rational jury could have found that Shirley was in constructive possession of the firearms based on Willis' testimony.

### V. The district court's denial of the motion for continuance

Shirley contends that the district court erred by denying her motion for a continuance since her attorney had only 82 days to prepare for trial. Shirley contends that she needed additional time to interview potential witnesses and obtain possible impeachment evidence on witnesses certain to testify.

We review a district court's decision denying a requested continuance for an abuse of discretion. *United States v. Flynt,* 756 F.2d 1352, 1358 (9th Cir.), *modified on other grounds,* 764 F.2d 675 (9th Cir.1985). "We do not find a clear abuse of discretion unless, after carefully evaluating all the relevant factors, we conclude that the denial was arbitrary or unreasonable." *Id.* The relevant factors are: 1) the extent of the defendant's diligence in readying the defense; 2) the likelihood the continuance would have satisfied defendant's need; 3) the inconvenience to the court, opposing party and witnesses; and 4) the extent to which the defendant may have been harmed. *Id.* at 1359. Finally, "[t]o demonstrate reversible error, the defendant must show that the denial resulted in actual prejudice to his defense." *United States v. Lane,* 765 F.2d 1376, 1379 (9th Cir.1985).

■ The district court's denial of Shirley's motion was neither arbitrary nor unreasonable. The court appointed counsel for Shirley on May 20, 1987, and continued the initial trial date, at the request of all the defendants, from June 30 until August 10th. On July 9th, Shirley moved for a continuance until sometime after March 1, 1988. The other defendants did not join in this motion and defendant McMullen opposed it. A continuance would have resulted in inconvenience to the government which planned to call over 70 witnesses, some of which were either in prison or in the Witness Protection Program.

Also, Shirley has failed to demonstrate any actual prejudice. Shirley contends that she needed additional time to find impeachment evidence against Audry Alo, Benjamin Willis, and Stephan Sanders. Shirley only asserts generally that additional time was likely to lead to other witnesses and important information. "What *might* have been discovered had a continuance been granted is inadequate to establish prejudice." *United States v. Hernandez*, 608 F.2d 741, 746 (9th Cir.1979) (emphasis in original). Shirley received extensive discovery material and the record demonstrates that Alo and Willis were cross-examined extensively about their prior criminal records, alleged perjury at the earlier trial or during the investigation, and agreements with the government.

Likewise, Shirley contends that a continuance would have given her an opportunity to talk to Kessler and Gary Anderson before trial. In July, the district court directed counsel to contact Kessler by phone to determine if a personal trip was warranted. Kessler was in prison and Shirley's investigator talked to Kessler on the phone in early August. Shirley's problem arose from the court's denial of her Rule 17(b) motion to secure Kessler's testimony and not from lack of time to prepare for Kessler's examination (*see* section 2, *supra*). Likewise, the record indicates that Shirley did talk to Anderson in late July and had an affidavit from him before trial. Anderson was unwilling to testify for Shirley for fear of perjuring himself on cross-

examination, and consequently Shirley refused to call him as a witness.

Last, in her motion, Shirley included a long list of potential witnesses she wished to interview before trial. The location of many of these witnesses was unknown, and Shirley made no showing that they could be located within a reasonable time or that they would be willing to testify. Under these circumstances, the district court did not abuse its discretion. *See Powell v. United States*, 420 F.2d 799, 801 (9th Cir. 1969).

VI. *Disclosure of the in camera materials after the jury trial*

Last, Shirley contends that the district court's order, after Shirley's motion for new trial, compelling her to disclose the *in camera* materials provided in her investigation of the case and earlier motions for a continuance somehow prejudiced her. The district court ordered these materials unsealed to give the government an opportunity to respond to Shirley's claim that the district court's failure to grant a continuance prejudiced her defense.

■ The government argues that since a motions panel of this court denied Shirley's petition for a writ of mandamus, the law of the case doctrine precludes relitigation of this issue. The government's argument is without merit, as the panel denied the petition without opinion. *See, e.g., Key v. Wise*, 629 F.2d 1049, 1054–55 (5th Cir.1980), *cert. denied*, 454 U.S. 1103, 102 S.Ct. 682, 70 L.Ed.2d 647 (1981) (law of the case doctrine does not preclude examination of issue when a prior panel denied a petition for writ of mandamus since the denial could have been predicated on the fact that the party had an adequate remedy on appeal and not necessarily on the merits of the claim).

Shirley, however, does not argue that this disclosure after trial in any way affected the validity of the jury verdict issued seven months before. Rather, she generally contends that an indigent defendant should have access to investigative services, and should not be forced to disclose information obtained in this way. Shirley

was not denied these investigative services, and since we affirm the conviction we need not reach the question whether this disclosure would have affected a new trial.

The judgment of conviction is AFFIRMED.