UNITED STATES of America,
Plaintiff–Appellee,

v.

Hector MEDRANO, Defendant–
Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Hector MEDRANO, Defendant–
Appellant.

Nos. 91–50556, 91–50616.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 8, 1992.

Decided Feb. 16, 1993.

Phillip C. Nychay, La Jolla, CA, for defendant-appellant.

George Bennett, Asst. U.S. Atty., San Diego, CA, for plaintiff-appellee.

Before: ALDISERT,* CANBY and THOMPSON, Circuit Judges.

* Hon. Ruggero J. Aldisert, United States Circuit Judge for the Third Circuit, sitting by designa- tion.

**300**

DAVID R. THOMPSON, Circuit Judge:

Hector Medrano was charged with one count of conspiracy to manufacture and distribute methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1); one count of distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1); and four counts of possession and distribution of ephedrine, a listed precursor chemical, "having reasonable cause to believe that [it] would be used in the manufacture of methamphetamine, in violation of 21 U.S.C. §§ 841(d)(1) and 802(34)(C)." A jury convicted him on all counts. He was sentenced by United States District Judge Jack E. Tanner to 324 months imprisonment. Medrano appeals his convictions on two of the four counts which charged him with possession and distribution of ephedrine for the manufacture of methamphetamine.[1] He also appeals his sentence. We have jurisdiction under 28 U.S.C. § 1291. We reverse Medrano's convictions on the two contested counts, because as to these two counts the evidence of his possession was insufficient. We also vacate his sentence and remand to the district court for resentencing.

In a separate jury trial before United States District Judge Howard B. Turrentine, Medrano was convicted of distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Judge Turrentine sentenced Medrano to a concurrent 324-month sentence, the same length of sentence imposed by Judge Tanner. Medrano appeals his conviction and sentence. We have jurisdiction under 28 U.S.C. § 1291. We affirm Medrano's conviction, but we vacate his sentence and remand for resentencing because he was not afforded the right of allocution before sentencing as required by Federal Rule of Criminal Procedure 32(a)(1)(C). This rule provides that "[b]efore imposing sentence, the court shall ... address the defendant personally and

determine if the defendant wishes to make a statement and to present any information in mitigation of the sentence." Fed. R.Crim.P. 32(a)(1)(C).

We turn first to Medrano's two challenged convictions and his sentence in Judge Tanner's court in Case No. 91-50616. These convictions relate to events which occurred on July 12, 1990 and August 3, 1990, alleged in counts five and six in the indictment.

On July 12, 1990, Medrano met two undercover officers at a restaurant to arrange the purchase of four barrels of ephedrine. He gave one of the officers the keys to his car, and went into the restaurant with the other. The officer with the keys to Medrano's car drove it to a place where the DEA had a stockpile of ephedrine, loaded four barrels of ephedrine into the trunk of the car, closed the trunk, and drove the car back to the restaurant. When he arrived at the restaurant, the officer remained seated in the driver's seat. Medrano saw that the car had returned, and handed a bag containing over $72,000 in cash to the officer who had remained with him in the restaurant. As he and that officer left the restaurant, and before Medrano's keys to his car were returned to him, a group of DEA agents, posing as Mexican federal officers, "arrested" the two undercover officers, seized Medrano's car, the money he had paid to the undercover officer, and the four barrels of ephedrine and drove away with the two undercover officers in tow. Medrano was left standing in the parking lot.

Undeterred, Medrano tried again to buy barrels of ephedrine. On August 3, 1990, he met a DEA informant at another restaurant. This time the trunk of his car was loaded with two barrels of ephedrine from the DEA stockpile. When the car was returned to the restaurant, Medrano paid

---

**1.** The court instructed the jury that they could convict Medrano of the four counts of possession and distribution of ephedrine if they found that he either possessed or distributed ephedrine having reasonable cause to believe that it would be used in the manufacture of methamphetamine. We cannot tell from the jury's verdict of guilty on these counts whether the jury found Medrano guilty of possession or distribution of ephedrine, in violation of 21 U.S.C. §§ 841(d)(1) and 802(34)(C). Medrano and the government take the position that Medrano's convictions on the two counts he appeals stand or fall on the question whether he possessed ephedrine. We accept this characterization for purposes of this appeal.

the informant $34,460 in cash. As he left the restaurant, and before the keys to his car were returned to him, he was arrested.

## SUFFICIENCY OF THE EVIDENCE

Medrano contends there was insufficient evidence to convict him of possession of either the four barrels of ephedrine involved in the July 12, 1990 transaction, or the two barrels involved in the August 3, 1990 transaction. In resolving these challenges, we view the evidence in the light most favorable to the government and will affirm if " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Mena*, 925 F.2d 354, 356 (9th Cir.1992), quoting *United States v. Gillock*, 886 F.2d 220, 221–22 (9th Cir.1989).

■ A person has constructive possession of an object if the evidence shows "ownership, dominion or control over the contraband itself or the premises or vehicle in which the contraband is concealed." *United States v. Shirley*, 884 F.2d 1130, 1134 (9th Cir.1989). Medrano contends on both occasions he relinquished dominion and control of his car to the undercover agents who loaded the ephedrine into the trunk, and he never regained control of the car or the ephedrine.

■ The evidence, viewed in the light most favorable to the government, shows that Medrano controlled each transaction by arranging the procedure for taking delivery of the ephedrine and that he paid for it. The government contends this is sufficient under two of our decisions to support Medrano's conviction.

The government argues that in *Mena*, the defendant never touched the contraband, but "cocaine was placed in Mena's van at a prearranged meeting after he showed the DEA agent the money with which he intended to pay for the cocaine," *Mena*, 925 F.2d at 356. In *Shirley*, an accomplice testified that he placed firearms in the trunk of a 1973 Dodge and the keys in the ashtray and "Shirley knew where the car and the guns were located," *Shirley*, 884 F.2d at 1134. In both cases the convic-

tions for possession of contraband were affirmed. *See also United States v. O'Connor*, 737 F.2d 814, 819 (9th Cir.1984) (affirming a possession conviction even though, because of intense surveillance "there was scant, if any, chance that the government-supplied cocaine would find its way into distribution."), *cert. denied*, 469 U.S. 1218, 105 S.Ct. 1198, 84 L.Ed.2d 343 (1985).

The cases on which the government relies are distinguishable from the present case. The distinguishing factor is that here Medrano never retrieved the keys to his car and without the keys to the car he did not have access to the ephedrine in the trunk. *Mena* and *Shirley* are inapposite.

As other circuits have explained, when a defendant receives the keys to a vehicle or to a place where the contraband is located he has "dominion and control" over the contraband. In *United States v. Martorano*, 709 F.2d 863, 869 (3d Cir.), *cert. denied*, 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983), the court held that the defendant took constructive possession of a van containing a controlled substance when the government informant gave the defendant the keys to the van. In *Martorano*, as here, the government had no intention of relinquishing control over the contraband—eleven agents seized the van and the defendant's confederate (who by then had the keys) before the engine could even be started. *Id.* at 872 (Gibbons, J., dissenting). Nevertheless, the defendant's confederate had the keys, this provided access to the contraband, and there was sufficient evidence of dominion and control to support the conviction. *See also United States v. Posner*, 868 F.2d 720, 724 (5th Cir.1989) (actual possession passed to the defendant when he took possession of the keys to a van containing marijuana); *United States v. Damsky*, 740 F.2d 134, 139 (2d Cir.) ("Damsky had dominion and control over the camper once he was given the key and was therefore in constructive possession of the hashish in the camper"), *cert. denied*, 469 U.S. 918, 105 S.Ct. 298, 83 L.Ed.2d 233 (1984); *see generally United States v. Brett*, 872 F.2d 1365, 1369 n. 3 (8th Cir.)

("We note that every other circuit to address this issue agrees that the holder of the key, be it to the dwelling, vehicle or motel room in question, has constructive possession of the contents therein."), *cert. denied*, 493 U.S. 932, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989).

When the evidence is viewed in the light most favorable to the government, it establishes that in both transactions when Medrano's car was returned to the restaurant with the ephedrine in the trunk, the DEA agent who drove the car remained in the driver's seat and Medrano's keys were never returned to him. In these circumstances, no rational trier of fact could conclude beyond a reasonable doubt that Medrano ever had actual or constructive possession of the ephedrine in the trunk of the car. Accordingly, we reverse Medrano's convictions on counts five and six of the indictment.[2]

We vacate the sentence imposed by Judge Tanner and remand for resentencing in Case No. 91–50616.

We turn next to Medrano's conviction and sentence in Judge Turrentine's court in Case No. 91–50556.

█ With regard to his conviction, the evidence that Medrano sold cocaine to a DEA agent and informant was overwhelming. Accordingly, we reject as harmless error at most, Medrano's arguments that the district court erred in admitting testimony by two government agents who implied that Medrano had a previous history of drug trafficking, and that the district court abused its discretion in allowing the prosecutor to make certain contested comments to the jury during final argument.

█ Medrano also challenges his sentence. At the sentencing hearing, the court questioned Medrano's counsel and offered counsel the opportunity to argue on Medrano's behalf. The court, however, did not ask Medrano if he wanted to say anything before he was sentenced. Medrano was sentenced to 324 months imprison-

ment, which was at the low end of the applicable guideline range. The court ordered this sentence to run concurrently with the 324–month sentence which had been imposed by Judge Tanner.

The government concedes Medrano was denied his right of allocution as required by Federal Rule of Criminal Procedure 32(a)(1)(C), but it contends the error was harmless. We disagree.

We have held that when a district court imposes a sentence that is "already as short as it could possibly be under the Guidelines," its error in not offering the defendant the opportunity to speak before sentencing may be harmless. *United States v. Mejia*, 953 F.2d 461, 468 (9th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1983, 118 L.Ed.2d 581 (1992).

Although Medrano's sentence is at the lowest end of the applicable guideline range for his offense level and criminal history, we are not convinced that here, as in *Mejia*, the district court "used all the discretion it had available." *Id.* In *Mejia*, the court granted a downward adjustment, refused a request to depart downward, and imposed the shortest sentence under the guidelines. We noted that the court had "no other basis for departure." *Id.*

Here, the district court granted Medrano a two-level downward adjustment for acceptance of responsibility. Medrano's counsel did not request any downward departure. Medrano, however, was not personally addressed by the court to see if he had anything to say before sentence was imposed, as required by Federal Rule of Criminal Procedure 32(a)(1)(C). We cannot say that if Medrano had been afforded his right of allocution under Rule 32(a)(1)(C), no matter what he said, and even if he raised a ground not presented by his counsel, the court would not have granted a further downward adjustment in his offense level or departed downward from the guideline range. The problem is we don't know what Medrano might have said. The possibility that he might have said some-

---

**2.** Because we reverse the convictions on counts five and six on the ground of insufficient evidence, we do not reach Medrano's contention that the court improperly instructed the jury on those counts.

thing to prompt the court to impose a different sentence is admittedly remote. But it exists, and it exists in the face of a violation of Medrano's right of allocution under Federal Rule of Criminal Procedure 32(a)(1)(C). Accordingly, we must vacate Medrano's sentence.

## CONCLUSION

In the case before Judge Tanner, Case No. 91–50616, Medrano's convictions on counts five and six are reversed, and his sentence is vacated. In the case before Judge Turrentine, Case No. 91–50556, Medrano's conviction is affirmed, but his sentence is vacated. Both causes are remanded for resentencing.

AFFIRMED in part, REVERSED in part and REMANDED for resentencing.