**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Hector MEDRANO, Defendant–
Appellant (Two Cases).**

**Nos. 91–50556, 91–50616.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 8, 1992.

Opinion Filed Feb. 16, 1993.

Opinion Withdrawn Sept. 27, 1993.

Decided Sept. 27, 1993.

Phillip C. Nychay, La Jolla, CA, for defendant-appellant.

George Bennett, Asst. U.S. Atty., San Diego, CA, for plaintiff-appellee.

Before: ALDISERT,* CANBY and THOMPSON, Circuit Judges.

### ORDER

The government's petition for rehearing in Case No. 91–50616 is granted.

The opinion filed February 16, 1993, 986 F.2d 299, is withdrawn. A new opinion is filed with this order.

### OPINION

DAVID R. THOMPSON, Circuit Judge:

Hector Medrano was charged with one count of conspiracy to manufacture and distribute methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1); one count of distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1); and four counts of possession and distribution of ephedrine, a listed precursor chemical, "having reasonable cause to believe that [it] would be used in the manufacture of methamphetamine, in violation of 21 U.S.C. §§ 841(d)(1) and 802(34)(C)." A jury convicted him on all counts. He was sentenced by United States District Judge Jack E. Tanner to 324 months imprisonment. Medrano appeals his conviction.

* Hon. Ruggero J. Aldisert, United States Circuit Judge for the Third Circuit, sitting by designa-

tions on two of the four counts which charged him with possession and distribution of ephedrine for the manufacture of methamphetamine.[1] He also appeals his sentence. We have jurisdiction under 28 U.S.C. § 1291. On the two contested counts of conviction, we affirm Medrano's conviction on count five, but reverse his conviction on count six. As to count six, the evidence of his possession was insufficient. We also vacate his sentence and remand to the district court for resentencing.

In a separate jury trial before United States District Judge Howard B. Turrentine, Medrano was convicted of distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Judge Turrentine sentenced Medrano to a concurrent 324-month sentence, the same length of sentence imposed by Judge Tanner. Medrano appeals his conviction and sentence. We have jurisdiction under 28 U.S.C. § 1291. We affirm Medrano's conviction, but we vacate his sentence and remand for resentencing because he was not afforded the right of allocution before sentencing as required by Federal Rule of Criminal Procedure 32(a)(1)(C). This rule provides that "[b]efore imposing sentence, the court shall ... address the defendant personally and determine if the defendant wishes to make a statement and to present any information in mitigation of the sentence." Fed.R.Crim.P. 32(a)(1)(C).

We turn first to Medrano's two challenged convictions and his sentence in Judge Tanner's court in Case No. 91–50616. These convictions relate to events which occurred on July 12, 1990 (count five) and August 3, 1990 (count six).

Medrano argues the evidence was insufficient to support his convictions on these two counts. In considering this argument, we view the evidence in the "light most favorable to the prosecution." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61

L.Ed.2d 560 (1979). Viewed in this light, the facts are as follows.

On July 12, 1990, Medrano met two undercover officers at a restaurant to arrange the purchase of four barrels of ephedrine. He gave one of the officers the keys to his car, and went into the restaurant with the other. The officer with the keys to Medrano's car drove it to a place where the DEA had a stockpile of ephedrine, loaded four barrels of ephedrine into the trunk of the car, closed the trunk, and drove the car back to the restaurant. The officer in the restaurant went out to the car and obtained the keys from the driver. He returned to the restaurant and handed the keys to Medrano. Medrano then went to the car and inspected the barrels of ephedrine in the trunk. Having ascertained that the merchandise had been delivered, Medrano returned to the restaurant and handed the officer a bag containing over $72,000 in cash.

This sequence followed the protocol for Medrano's first two purchases of ephedrine. San Diego Police Detective Chacon, the undercover officer in the restaurant during the third transaction on July 12, 1990, was also involved in the first two transactions. He testified:

Q. On the final two transactions that occurred on July the 12th and on August the 3rd, the protocol was the same except for Medrano was not allowed to leave with the ephedrine; is that correct?

A. I believe on the second time he left with the ephedrine. It was on the third contact [July 12, 1990] that he was not allowed to leave.

&ast; &ast; &ast; &ast; &ast; &ast;

Q. All right. On the third transaction, was it the same situation, though where you would meet him inside, the keys would be exchanged, and the barrels

---

1. The court instructed the jury that they could convict Medrano of the four counts of possession and distribution of ephedrine if they found that he either possessed or distributed ephedrine having reasonable cause to believe that it would be used in the manufacture of methamphetamine. We cannot tell from the jury's verdict of guilty on these counts whether the jury found Medrano guilty of possession or distribution of ephedrine, in violation of 21 U.S.C. §§ 841(d)(1) and 802(34)(C). Medrano and the government take the position that Medrano's convictions on the two counts he appeals stand or fall on the question whether he possessed ephedrine. We accept this characterization for purposes of this appeal.

would be put into his vehicle at some other location by the other agents?

A. Same scenario.

Q. And that was the same thing for all three deliveries that you were involved with?

A. Yes.

Medrano contends this testimony provides insufficient evidence to show that the keys to the car were returned to him after the ephedrine had been loaded in the trunk. He argues the testimony merely highlights certain elements of the transaction of July 12, and that it was impermissible for the jury to infer that *all* of the events were the same as the first two transactions. We disagree. According to the quoted testimony, and viewing it in the light most favorable to the government, a rational jury could have found that the "same scenario" was followed on July 12 as on the two previous occasions— the keys to the car were returned to Medrano when the car was brought back to the restaurant after the ephedrine had been loaded in the trunk.

After Medrano retrieved the keys to the car and paid for the ephedrine, he and the officer left the restaurant. As they did, a group of DEA agents, posing as Mexican federal officers, "arrested" the two undercover officers, seized Medrano's car, the money he had paid to the undercover officer, and the four barrels of ephedrine and drove away with the two undercover officers in tow. Medrano was left standing in the parking lot.

Undeterred, Medrano tried again to buy barrels of ephedrine. On August 3, 1990, he met a DEA informant at another restaurant. Detective Chacon, who had participated in the first three transactions, did not participate in this one. On this occasion, the trunk of the car was loaded with two barrels of ephedrine from the DEA stockpile. When the car was returned to the restaurant, Medrano paid the informant $34,460 in cash. As he left the restaurant he was arrested. There was no evidence from which a reasonable jury could conclude that the keys to the car had been returned to him.

## SUFFICIENCY OF THE EVIDENCE

Medrano contends there was insufficient evidence to convict him of possession of either the four barrels of ephedrine involved in the July 12, 1990 transaction charged in count five, or the two barrels involved in the August 3, 1990 transaction charged in count six. In resolving these challenges, we view the evidence in the light most favorable to the government, *Jackson, supra,* and will affirm if " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Mena,* 925 F.2d 354, 356 (9th Cir. 1991), quoting *United States v. Gillock,* 886 F.2d 220, 221–22 (9th Cir.1989).

A person has constructive possession of an object if the evidence shows "ownership, dominion or control over the contraband itself or the premises or vehicle in which the contraband is concealed." *United States v. Shirley,* 884 F.2d 1130, 1134 (9th Cir.1989). Medrano contends on both occasions he relinquished dominion and control of his car to the undercover agents who loaded the ephedrine into the trunk, and he never regained control of the car or the ephedrine.

The evidence shows that Medrano controlled each transaction by arranging the procedure for taking delivery of the ephedrine and that he paid for it. The government contends this is sufficient under two of our decisions to support Medrano's conviction.

The government argues that in *Mena,* the defendant never touched the contraband, but "cocaine was placed in Mena's van at a prearranged meeting after he showed the DEA agent the money with which he intended to pay for the cocaine," *Mena,* 925 F.2d at 356. In *Shirley,* an accomplice testified that he placed firearms in the trunk of a 1973 Dodge and the keys in the ashtray and "Shirley knew where the car and the guns were located," *Shirley,* 884 F.2d at 1134. In both cases the convictions for possession of contraband were affirmed. *See also United States v. O'Connor,* 737 F.2d 814, 819 (9th Cir.1984) (affirming a possession conviction even though, because of intense surveillance "there was scant, if any, chance that the government-supplied cocaine would find its

way into distribution."), *cert. denied,* 469 U.S. 1218, 105 S.Ct. 1198, 84 L.Ed.2d 343 (1985).

The cases on which the government relies support Medrano's conviction on count five, the July 12, 1990 transaction. The facts of the August 3, 1990 transaction, however, are different. In that final transaction, Medrano never retrieved the keys to the car and without the keys to the car he did not have access to the ephedrine in the trunk. As to the August 3, 1990 transaction, *Mena* and *Shirley* are inapposite.

■ As other circuits have explained, when a defendant receives the keys to a vehicle or to a place where the contraband is located he has "dominion and control" over the contraband. In *United States v. Martorano,* 709 F.2d 863, 869 (3d Cir.), *cert. denied,* 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983), the court held that the defendant took constructive possession of a van containing a controlled substance when the government informant gave the defendant the keys to the van. In *Martorano,* as here, the government had no intention of relinquishing control over the contraband—eleven agents seized the van and the defendant's confederate (who by then had the keys) before the engine could even be started. *Id.* at 872 (Gibbons, J., dissenting). Nevertheless, the defendant's confederate had the keys, this provided access to the contraband, and there was sufficient evidence of dominion and control to support the conviction. *See also United States v. Posner,* 868 F.2d 720, 724 (5th Cir.1989) (actual possession passed to the defendant when he took possession of the keys to a van containing marijuana); *United States v. Damsky,* 740 F.2d 134, 139 (2d Cir.) ("Damsky had dominion and control over the camper once he was given the key and was therefore in constructive possession of the hashish in the camper"), *cert. denied,* 469 U.S. 918, 105 S.Ct. 298, 83 L.Ed.2d 233 (1984); *see generally United States v. Brett,* 872 F.2d 1365, 1369 n. 3 (8th Cir.) ("We note that every other circuit to address this issue agrees that the holder of the key, be it to the dwelling, vehicle or motel room in question, has constructive possession of the contents therein."), *cert. denied,* 493 U.S. 932, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989).

We conclude that the evidence in the present case is insufficient for a trier of fact to find beyond a reasonable doubt that Medrano ever had actual or constructive possession of the ephedrine the DEA agents put in the trunk of his car during the August 3, 1990 transaction. Accordingly, we reverse Medrano's conviction on count six of the indictment.

## JURY INSTRUCTION

We next consider Medrano's jury instruction challenge as it relates to count five. Medrano argues the district court erred in refusing to instruct the jury that:

> Merely being in proximity to an object without any real ability to control or retain that object does not constitute possession.

We recently clarified our standard of review of challenges to jury instructions.

> Where the question to be resolved is whether other instructions adequately covered the defense theory of the case, our review is de novo. *See United States v. Gomez–Osorio,* 957 F.2d 636, 642 (9th Cir. 1992). The same standard applies to whether the proposed instruction is supported by law. *See id.* Our review is for an abuse of discretion where the question is whether the factual foundation for a proposed instruction exists. *Id.*

> "A proposed instruction regarding the [defendant's] theory of the case should be given if there is foundation for it in the evidence and it is supported by the law." *United States v. Tabacca,* 924 F.2d 906, 912 (9th Cir.1991) (citing *United States v. Escobar de Bright,* 742 F.2d 1196, 1198 (9th Cir.1984)).

*United States v. Garcia–Cruz,* 978 F.2d 537, 540 (9th Cir.1992).

■ Although "a defendant is not entitled to a mere presence instruction of his own phrasing," *United States v. Ferris,* 719 F.2d 1405, 1408 (9th Cir.1983), in certain cases where the government's case "rested primarily on [the defendant's] presence," *United States v. Negrete–Gonzales,* 966 F.2d 1277, 1282 (9th Cir.1992), and no more than just presence, *id.,* a mere presence or mere proximity instruction should be given.

■ Here, the district court correctly refused to give the "mere proximity" or "mere presence" instruction. Medrano engaged in affirmative conduct showing his intent to possess the contraband and the government's case was based on more than "mere presence." The standard instructions given by the court "fairly and adequately covered the issues presented." *Garcia–Cruz,* 978 F.2d at 540.

Because we reverse Medrano's conviction on count six, we vacate the sentence imposed by Judge Tanner and remand for resentencing in Case No. 91–50616.

We now consider Medrano's conviction and sentence in Judge Turrentine's court in Case No. 91–50556.

■ With regard to his conviction, the evidence that Medrano sold cocaine to a DEA agent and informant was overwhelming. Accordingly, we reject as harmless error at most, Medrano's arguments that the district court erred in admitting testimony by two government agents who implied that Medrano had a previous history of drug trafficking, and that the district court abused its discretion in allowing the prosecutor to make certain contested comments to the jury during final argument.

■ Medrano also challenges his sentence. At the sentencing hearing, the court questioned Medrano's counsel and offered counsel the opportunity to argue on Medrano's behalf. The court, however, did not ask Medrano if he wanted to say anything before he was sentenced. Medrano was sentenced to 324 months imprisonment, which was at the low end of the applicable guideline range. The court ordered this sentence to run concurrently with the 324-month sentence which had been imposed by Judge Tanner.

The government concedes Medrano was denied his right of allocution as required by Federal Rule of Criminal Procedure 32(a)(1)(C), but it contends the error was harmless. We disagree.

We have held that when a district court imposes a sentence that is "already as short as it could possibly be under the Guidelines," its error in not offering the defendant the opportunity to speak before sentencing may

be harmless. *United States v. Mejia,* 953 F.2d 461, 468 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1983, 118 L.Ed.2d 581 (1992).

Although Medrano's sentence is at the lowest end of the applicable guideline range for his offense level and criminal history, we are not convinced that here, as in *Mejia,* the district court "used all the discretion it had available." *Id.* In *Mejia,* the court granted a downward adjustment, refused a request to depart downward, and imposed the shortest sentence under the guidelines. We noted that the court had "no other basis for departure." *Id.*

Here, the district court granted Medrano a two-level downward adjustment for acceptance of responsibility. Medrano's counsel did not request any downward departure. Medrano, however, was not personally addressed by the court to see if he had anything to say before sentence was imposed, as required by Federal Rule of Criminal Procedure 32(a)(1)(C). We cannot say that if Medrano had been afforded his right of allocution under Rule 32(a)(1)(C), no matter what he said, and even if he raised a ground not presented by his counsel, the court would not have granted a further downward adjustment in his offense level or departed downward from the guideline range. The problem is we don't know what Medrano might have said. The possibility that he might have said something to prompt the court to impose a different sentence is admittedly remote. But it exists, and it exists in the face of a violation of Medrano's right of allocution under Federal Rule of Criminal Procedure 32(a)(1)(C). Accordingly, we must vacate Medrano's sentence.

## CONCLUSION

In the case before Judge Tanner, Case No. 91–50616, Medrano's conviction on count five is affirmed, but the conviction on count six is reversed and his sentence is vacated.

In the case before Judge Turrentine, Case No. 91–50556, Medrano's conviction is affirmed, but his sentence is vacated. Both causes are remanded for resentencing.

AFFIRMED in part, REVERSED in part, and REMANDED for resentencing.