47 F.3d 1177
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ricardo MORENO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Rene Enrique TINEO, Defendant-Appellant.
 Nos. 94-10127, 94-10278.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 17, 1995.*
Decided Feb. 24, 1995.
 
 Before: FLETCHER, PREGERSON, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Ricardo Moreno and Rene Tineo appeal their jury convictions and sentences under the Sentencing Guidelines for conspiracy to possess with intent to distribute marijuana, 21 U.S.C. Secs. 846, 841(a)(1) and 841(b)(1)(A), and unlawful use and carrying of a firearm during a federal offense, 18 U.S.C. Sec. 924(c). Tineo's counsel has moved to withdraw as counsel of record pursuant to Anders v. California, 386 U.S. 738 (1967). We have jurisdiction over these appeals under 28 U.S.C. Sec. 1291. We affirm Moreno's conviction and his sentence. We grant the motion of Tineo's attorney to withdraw as counsel of record and affirm Tineo's conviction.
 
 I. BACKGROUND
 
 3
 This case arises out of a conspiracy to distribute marijuana. The facts of this case were primarily testified to by Roger Bradley, a former co-defendant who testified against Moreno and his two co-defendants pursuant to a plea agreement. Bradley's testimony set out the following facts.
 
 
 4
 Bradley was a semi-tractor trailer driver. In 1990 or 1991, Rene Tineo asked Bradley if he would haul some drugs across the United States. Tineo told Bradley that he had a partner named Robert, who was the "money man." Bradley agreed to haul the drugs, and in his first run he hauled 600 pounds of marijuana to Michigan and New Hampshire.
 
 
 5
 After this first run, Tineo and Robert decided Bradley was too slow in making the delivery, so they hired Ricardo Moreno as a co-driver. Together Bradley and Moreno drove five more loads of marijuana across the United States.
 
 
 6
 Bradley's first trip with Moreno was a delivery of over 2,000 pounds of marijuana to Concord, New Hampshire. Bradley testified that he stayed at the Comfort Inn in Concord with Moreno. At trial, the government introduced a room receipt for the Concord Comfort Inn. The receipt showed that Bradley stayed at the Comfort Inn with one other person on the day Bradley had testified was the date that he and Moreno were in Concord.
 
 
 7
 Moreno stopped making the trips with Bradley for a period of time because of a dispute Moreno had with Tineo over how much he should be paid. After Moreno left, Dennis Harris was hired as Bradley's co-driver. Harris also testified at Moreno and Tineo's trial pursuant to a plea agreement. Bradley and Harris hauled between five and seven loads of marijuana, with the amount of marijuana in each load ranging from 2,000 to 5,000 pounds. The marijuana was hidden in loads of produce.
 
 
 8
 Harris testified that some time after that, he and Bradley went to a ranch in Tucson. At the ranch, Harris saw Moreno unloading produce from a tractor-trailer, and unloading marijuana from a panel truck and putting the marijuana into boxes to be loaded into the trailer. Harris also saw Moreno working on the truck when it broke down later that day.
 
 
 9
 The day after they went to the ranch, Tineo called Harris and Bradley and told them to meet him at Room 120 at the Rodeway Inn. Harris and Bradley went to the motel room, and were met there by Moreno, Tineo, and others. At the motel room, Harris and Tineo argued about money Harris was owed for his last delivery.
 
 
 10
 Everyone in the group except Harris then went out to a nightclub in Tucson. At the nightclub, Tineo met Arturo Loya Sandoval. Sandoval is a paid DEA informant who also testified at the trial. Tineo asked Sandoval to transport drugs for him, and Sandoval said that he would. Sandoval went back with the group to Room 120.
 
 
 11
 At the motel room, Sandoval noticed that Harris had a gun in his back pocket. Harris also testified at trial that he was carrying a gun. Harris then prepared a drug ledger for the outgoing load while everyone was still present in the motel room.
 
 
 12
 Sandoval left the motel room and called DEA Agents Prather and Terrazas. Harris left the room and retrieved his belongings, as well as a second gun owned by Bradley. Agent Prather set up surveillance on the Rodeway Inn early the next morning. At trial, Agent Prather testified that he saw Moreno arrive at the motel room, and that he later saw Moreno at the motel room in the company of Tineo and Harris. Prather also saw the truck containing a load of marijuana parked at the Rodeway Inn.
 
 
 13
 Sandoval then drove the truck to Flagstaff with Harris. According to a plan earlier arranged with Sandoval, the truck was stopped by Arizona police, who found over 4,000 pounds of marijuana in the trailer hidden in a load of produce. Harris had his gun and Bradley's gun in his possession.
 
 
 14
 Tineo and Moreno were tried with co-defendant Leopoldo Saenz-Bernal, who was acquitted on all counts. Nothing in the record before us describes what the allegations were as to Saenz-Bernal's role in the organization. Tineo and Moreno were convicted on all counts.
 
 II. ANALYSIS
 
 15
 On appeal, Moreno claims that the district court erred when it denied his motion for judgment of acquittal, made pursuant to Fed.R.Crim.P. 29. Moreno also argues that the district court should have reduced his sentence under the Sentencing Guidelines because he was a minor participant under U.S.S.G. Sec. 3B1.2. In addition, Tineo's counsel has moved to withdraw as counsel of record under Anders v. California. We address these issues in turn below.
 
 A. MORENO'S MOTION FOR ACQUITTAL
 
 16
 Moreno contends that the district court erred in denying his motion for judgment of acquittal. "We review a district court's denial of a motion for acquittal in the same manner as a challenge to the sufficiency of the evidence." United States v. Shirley, 884 F.2d 1130, 1134 (9th Cir.1989). Therefore, we review the evidence presented against Moreno in the light most favorable to the government to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).
 
 
 17
 Moreno asserts that the only evidence of his guilt came from witnesses Bradley and Harris, with additional corroboration from Agent Prather. Moreno contends that Bradley and Harris were "severely discredited" during cross-examination, both by their favorable plea agreements, as well as by inconsistencies in their testimony. Moreno argues that Harris' testimony in particular was not credible because he never mentioned Moreno in his first or second statements to government agents. In addition, Moreno argues that Agent Prather's corroboration testimony--that he saw Moreno at the motel in the company of Tineo and Harris--was insufficient to bolster the weak testimony of Bradley and Harris.
 
 
 18
 The primary evidence entered against Moreno was the testimony of Bradley and Harris. Bradley's main testimony against Moreno was that Moreno made five cross-country marijuana deliveries with him. Harris testified that he saw Moreno unload and pack the marijuana in preparation for loading it into the tractor-trailer, and that he saw Moreno working on the truck after it broke down. Harris also testified about Moreno's presence during the arguments about the drug dealing that took place at the Rodeway Inn.
 
 
 19
 In United States v. Vaccaro, 816 F.2d 443 (9th Cir.), cert. denied, 484 U.S. 914, and cert. denied, 484 U.S. 928 (1987), the appellants argued that insufficient evidence supported their convictions because those convictions were based on unreliable testimony by government witnesses. We rejected that argument, stating, "[t]he credibility of witnesses and the weight accorded the evidence are questions for the jury that are not reviewable." Vaccaro, 816 F.2d at 454. We stated further in Vaccaro that "the testimony of [such] witnesses is not incredible merely because the witnesses participated in the alleged crimes." Id.
 
 
 20
 Here, the jury evidently believed the testimony of Bradley and Harris despite Moreno's attempts to discredit them during cross-examination. Further, Agent Prather corroborated their earlier testimony that Moreno was present at the motel room before Sandoval and Harris left with the last load of marijuana. And while Moreno points out that the motel receipt from the Concord Comfort Inn only had Bradley's name on it, and not Moreno's, the receipt did state that Bradley stayed in the room with another person, and the date on the receipt matched the date Bradley had earlier named. The receipt thus provided some additional corroboration of Bradley's testimony.
 
 
 21
 Viewing the evidence presented in the light most favorable to the government, we agree with the district court that there was sufficient evidence from which a reasonable juror could have found Moreno guilty beyond a reasonable doubt. Therefore, we conclude that the district court did not err in denying Moreno's Rule 29 motion.
 
 
 22
 B. DOWNWARD ADJUSTMENT FOR MINOR PARTICIPANT
 
 
 23
 Moreno argues that he was a minimal or minor participant under U.S.S.G. Sec. 3B1.2, and that the district court should have reduced his offense level accordingly.
 
 
 24
 Section 3B1.2 of the Sentencing Guidelines reads:
 
 Sec. 3B1.2. Mitigating Role
 
 25
 Based on the defendant's role in the offense, decrease the offense level as follows:
 
 
 26
 (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
 
 
 27
 (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
 
 
 28
 In cases falling between (a) and (b), decrease by 3 levels.
 
 
 29
 U.S.S.G. Sec. 3B1.2.
 
 
 30
 We review the trial court's determination that a defendant is not a minimal or minor participant for clear error. United States v. Peters, 962 F.2d 1410, 1414 (9th Cir.1992).
 
 
 31
 Moreno argues that he was just a courier and loader of marijuana and thus was entitled to the minimal or minor participant adjustment. But under the commentary to section 3B1.2, Moreno's conduct as a courier and loader here clearly does not entitle him to the minimal participant adjustment.
 
 Note 2 to Sec. 3B1.2 states:
 
 32
 2. It is intended that the downward adjustment for a minimal participant will be used infrequently. It would be appropriate, for example, for someone who played no other role in a very large drug smuggling operation than to offload part of a single marihuana [sic] shipment, or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs.
 
 
 33
 U.S.S.G. Sec. 3B1.2, comment. (n. 2). Here, Moreno drove five loads of thousands of pounds of marijuana across the country, and he helped load the truck with the 4,000 pounds of marijuana seized in Flagstaff. Such conduct is clearly beyond the scope of the minimal participation adjustment.
 
 
 34
 Moreno then cites the commentary to section 3B1.2 to support his argument that he was at most a minor participant. Application Note 3 states that "[f]or purposes of Sec. 3B1.2(b), a minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. Sec. 3B1.2, comment. (n. 3).
 
 
 35
 We stated in United States v. Andrus, however, that "the guidelines did not intend for every defendant who was less culpable than his codefendants to be granted minor participant status." United States v. Andrus, 925 F.2d 335, 337 (9th Cir.), cert. denied, 112 S.Ct. 249 (1991). In United States v. Torres-Dominguez, 930 F.2d 1375, 1389 (9th Cir.1991), we affirmed the district court's denial of the minor participant adjustment to an appellant, Estrada, who worked on the truck used for the heroin delivery, and who drove the truck when it was loaded with drugs. Moreno performed essentially the same role in the current conspiracy as did Estrada in Torres-Dominguez. The district court did not clearly err in determining that he was not eligible for this adjustment.
 
 
 36
 C. COUNSEL FOR TINEO'S MOTION TO WITHDRAW UNDER ANDERS
 
 
 37
 Pursuant to Anders v. California, 386 U.S. 738 (1967), Tineo's counsel has filed a brief stating that he finds no meritorious issues for appeal. However, Tineo's counsel does point our attention to one possible appealable issue: the trial court's failure to give an instruction that Tineo was only vicariously liable for possessing a gun if possession of the gun was foreseeable.
 
 
 38
 Tineo was convicted of Count Four, possessing a firearm during a drug trafficking crime, in violation of 18 U.S.C. Sec. 924(c), on a theory of Pinkerton liability. See Pinkerton v. United States, 328 U.S. 640 (1946) (a conspirator is vicariously liable for all acts committed by his co-conspirators during the course of and in furtherance of the conspiracy). Harris testified at trial that he possessed a gun when he was driving the marijuana for Tineo. Sandoval also testified that he saw Harris carrying a gun at the motel room.
 
 
 39
 Tineo argues that the district court erred when it failed to instruct the jury that Tineo could only be liable for possessing the gun if the presence of the gun were foreseeable. Tineo admits that trial counsel failed to request this instruction, but contends that the court should have given the instruction sua sponte.
 
 
 40
 We review for plain error the trial court's failure to give the foreseeability instruction. United States v. Fagan, 996 F.2d 1009, 1016 (9th Cir.1993) (plain error review where there is no objection to the instructions at trial). In United States v. Roselli, 432 F.2d 879, 894 n. 25 (9th Cir.1970), cert. denied, 401 U.S. 924 (1971), we held that reasonable foreseeability language may be added to a Pinkerton instruction if requested, but its omission is not reversible error. Here, where counsel did not request this language, its omission from the instruction was not clear error.
 
 
 41
 In addition, our independent examination of the record, pursuant to Penson v. Ohio, 488 U.S. 75, 83 (1988), discloses no further issues that merit review.
 
 III. CONCLUSION
 
 42
 We AFFIRM Moreno's conviction and sentence. We also AFFIRM Tineo's conviction, and GRANT the motion of Francisco Leon, Esq. to withdraw as counsel of record.
 
 
 
 *
 The panel unanimously found this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3