132 F.3d 41
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Troy HEFLIN, Defendant-Appellant.
 No. 96-10376.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 9, 1997.**
Decided Dec. 10, 1997.
 
 Appeal from the United States District Court for the Eastern District of California Oliver W. Wanger, District Judge, Presiding.
 Before: CHOY, FERGUSON, and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Troy Heflin appeals his conviction following a bench trial for being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 
 3
 Heflin contends that the evidence was insufficient to support the district court's finding that he constructively possessed ammunition that had traveled in interstate commerce. This contention lacks merit.
 
 
 4
 Ill reviewing a challenge to the sufficiency of the evidence, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements Of the crime beyond a reasonable doubt." United States v. Bentson, 947 F.2d 1353, 1355 (9th Cir.1991).
 
 
 5
 It is unlawful for a convicted felon to possess a firearm or ammunition that has t-raveled in interstate commerce. See 18 U.S.C. § 922(g)(1) (1994). Possession of ammunition under section 922(g) may be actual or constructive, See United States v. Shirley, 884 F.2d 1130, 1134 (9th Cir.1989). Constructive possession requires "a nexus or relationship between the defendant and the" ammunition such "that it is reasonable to treat the extent of the defendant's dominion and control as if it were actual possession." United States v. Terry, 911 F.2d 272, 278 (9th Cir.1990) (internal quotations omitted). Such a nexus exists where the defendant is a principal in a crime in which his co-participant possesses and uses ammunition with the defendant's knowledge. See United States v. Shirley, 884 F.2d 1130, 1134 (9th Cir.1939).
 
 
 6
 Here, testimony at trial established that Heflin assaulted the victim and held him on the floor while Heflin's co-participant shot him. Heflin was aware that his co-participant possessed a loaded firearm because his co-participant had just shot another person. Construing this evidence in the light most favorable to the government, a rational trier of fact could conclude beyond a reasonable doubt that Heflin knowingly participated in and facilitated the shooting, and thus that he constructively possessed the spent ammunition found at the crime scene shortly after the shooting. See Bentson, 947 F.2d at 1355; Shirley, 884 F.2d at 1134.
 
 
 7
 The government must also prove that the ammunition possessed by the defendant traveled in interstate commerce. See 18 U.S.C. § 922(g)(1); United States v. Hanna, 55 F.3d 1456, 1462 (9th Cir.1995). This interstate nexus is satisfied by proof that the ammunition was manufactured outside the state in which the defendant possessed it. See United States v. Patterson, 820 F.3d 1524, 1525 (9th Cir.1987).
 
 
 8
 Testimony at Heflin's trial established that the spent bullet found at the crime scene had been fired from a handgun discovered by the police several days later at Heflin's residence. The police also found a number of bullets with the handgun. These bullets were all of the same brand and were manufactured outside California. Additionally, there was evidence that the bullets had been purchased at a gun shop by one of Heflin's co-participants and then delivered with the handgun to Heflin's residence after the shooting. Construing this evidence in the light most favorable to the government, a rational trier of fact could conclude beyond a reasonable doubt that the spent bullet came from the uniform cache of ammunition at Heflin's residence, and therefore that it was manufactured outside California. See Bentson, 947 F.2d at 1355. Accordingly, there was sufficient evidence for the district court to find that the spent bullet had traveled in interstate commerce. See Patterson, 820 F.3d at 1525.
 
 
 9
 AFFIRMED.
 
 WIGGINS, Circuit Judge, dissenting:
 
 10
 Because I conclude that the government failed to meet its burden of proving that the bullet recovered on June 6 traveled in interstate commerce, I respectfully dissent.
 
 
 11
 When Heflin was originally convicted of violating 18 U.S.C. § 922(g)(1), the district court found him guilty of two instances of possession. First, the district court found that he had jointly possessed the bullet that one of his accomplices fired at Crossman while Heflin restrained Crossman on June 6, 1993. Second, the district court found that Heflin constructively possessed the ammunition found in Stephens' apartment on June 10, 1993.
 
 
 12
 After he was convicted, Heflin moved for a new trial twice. His first motion was denied without an evidentiary hearing. After considering the second motion, the district court held an evidentiary hearings, and eventually granted Heflin's motion for a new trial, finding that the testimony Heflin had presented at the hearing raised a reasonable doubt as to whether the ammunition found at Stephens' apartment on June 10th, was in Heflin's possession. Then, the district court did an unusual thing: in lieu of holding a new trial, the court invited the government and the defense to stipulate that the evidence they would present at a new trial would be the same evidence presented at the first trial plus the evidence introduced at the evidentiary hearing. The parties agreed. As a result, the district court again found Heflin guilty, this time of just the June 6th instance of possession.
 
 
 13
 We must determine whether the government met its burden of showing beyond a reasonable doubt that the bullet recovered from the June 6th shooting had travelled in interstate commerce. Remaining mindful of the fact that the evidence must be evaluated in the light most favorable to the government, I cannot conclude that the government has established this element of the crime.
 
 
 14
 The district court made written findings of fact after Heflin's first trial. These findings included the following with respect to the interstate commerce element:
 
 
 15
 Agent Bauer testified that based on his examination of the ammunition, knowledge, background, training, and experience, it was his opinion that all the ammunition, Exhibits 10, 12, 13 and 17, had been manufactured at a Winchester Western facility at East Elton, Illinois, or New Haven, Connecticut, and that all such ammunition traveled in interstate commerce.
 
 ER B at 10.[1]
 
 16
 Contrary to the district court's statement, the testimony of Agent Bauer does not support this finding. Bauer only testified that Exhibits 12, 13, and 17--the ammunition recovered on June 10th--had traveled in interstate commerce. Bauer said nothing about Exhibit 10, the spent bullet recovered on June 6th. Therefore; Agent Bauer's testimony cannot support a finding that the ammunition that Heflin possessed on June 6th had traveled in interstate commerce.
 
 
 17
 Agent Hammond testified that Exhibit 10 was fired from the antique revolver which was recovered on. June 10th. Agent Bauer's testimony establishes that the bullets found in the revolver on June 10th were Winchester Western bullets that had traveled in interstate commerce. But even taken together, the testimony of these two agents still does not establish the manufacture of the bullet recovered on June 6th.
 
 
 18
 The majority relies on an incomplete chain of testimony to attempt to establish the source of the June 6th bullet. First, the majority ignores the evidence in the record which shows that the gun was fired several times on June 6th. This evidence suggests that the gun was either left empty or re-loaded between June 6th and June 10th, rebutting the inference that the bullets found with the gun on June 10th were the same as the June 6th bullet.
 
 
 19
 Second, the majority relies on a series of out-of-court statements made by Johnny Malarkey, one of Heflin's accomplices. Malarkey told an investigator that he bought the gun found on June 10th and some bullets and, at some point in time, gave the gun and bullets to Appellant's brother. His testimony fails to establish that the bullets found with the gun on June 10th were the same as that used on June 6th.
 
 
 20
 Third, the testimony of Alan Heflin, Appellant's brother, does not support the finding that Exhibit 10, the June 6th bullet, was of the same manufacture as the bullets found on June 10th. His testimony was only that he gave the revolver to Stephens. He does not say whether he had the revolver at all times after the shooting or whether the revolver was even loaded.
 
 
 21
 Finally, I note the only other piece of evidence in the record about what happened to the gun between June 6th and June 10th. The district court admitted Dana Scott's out-of-court statement that she saw Troy Heflin loading and unloading a handgun on June 9th. If anything, this evidence weakens the government's case, for it supports an inference that the bullets found in the revolver on June 10th were loaded on June 9th and were, therefore, not the same as the June 6th bullet.
 
 
 22
 In sum, the government did not offer the testimony of any witness as to where Exhibit 10 was manufactured (such as, e.g., testimony that the bullet was identical to those found on June 10th) and, in turn, whether the ammunition had traveled in interstate commerce. As a result, even if I evaluate the testimony offered by Agents Bauer and Hammond in the light most favorable to the government, I cannot conclude that a rational trier of fact could find beyond a reasonable doubt that Exhibit 10 had traveled in interstate commerce. Moreover, the majority's efforts to establish a connection between the bullets found on June 10th and the shooting on June 6th are inadequate. Accordingly, I would reverse Heflin's conviction.
 
 
 
 **
 The panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a); 9th Cir. R. 34-4
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Exhibit 10 refers to the spent bullet recovered from the June 6th crime scene. Exhibits 12 and 13, respectively, refer to the ammunition recovered from the antique revolver and the gym bag found in Stephens' apartment. Exhibit 17 refers to three bullets which were taken from the gym bag and test-fired by Agent Hammond