Blanche W. PETERSON, et al., Plaintiffs,

v.

James G. WATT, Secretary of the Interior, etc., et al., Defendants.

No. 79–3457.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 2, 1981.

Decided Jan. 22, 1982.

Peter R. Steenland, Jr., Washington, D.C., for plaintiffs.

Thomas G. Nelson, Twin Falls, Idaho, for defendants.

Before CHOY and SCHROEDER, Circuit Judges, and HATTER,* District Judge.

SCHROEDER, Circuit Judge:

The dispositive question in this appeal is whether this court should vacate a portion of the district court's decision because it purported to decide a claim never actually asserted or litigated between co-defendants.[1]

In 1958 Blanche and Flay Peterson purchased land on the east bank of the Colorado River in Arizona. The Colorado River subsequently moved eastward. Believing that they were entitled to the land that eventually emerged on the west bank in Nevada, the Petersons filed a complaint in 1972 seeking to quiet title to that land. The United States, as riparian owner of the land on the west bank of the Colorado River, was named as defendant. Because in 1966 the United States had contracted to sell to the State of Nevada all its interest in some 15,000 acres in the area, Nevada was subsequently joined as a party defendant. At that time Nevada claimed only an executory interest based upon its contractual right to purchase the land from the United States. It made no claim of title and had no colorable claim under the then current state of the law. See Bonelli Cattle Co. v. Arizona, 414 U.S. 313, 94 S.Ct. 517, 38 L.Ed.2d 526 (1973).

On the first day of trial in this matter, the Supreme Court partially overruled Bonelli. Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co., 429 U.S. 363, 97 S.Ct. 582, 50 L.Ed.2d 550 (1977). Upon learning that news during the noon recess, counsel for Nevada returned to the courtroom and advised the court that the state wished to preserve any rights that might flow to it as a result of the decision in Corvallis, supra.

Following trial and briefing, the district court issued an opinion which disposed of the Petersons' claim by concluding that their title had been completely extinguished by the movement of the river. 465 F.Supp. at 999. The Petersons did not appeal and have no further interest in the case.

In its comprehensive and detailed opinion, the district court went on, however, to determine ownership as between the United States and Nevada. It held that the United States owned all the land up to the westerly ordinary high water mark before permanent channelization in 1960 (the "modern ordinary high water mark"), and that Nevada owned approximately 90 acres, located between the modern ordinary high water mark and the present high water mark resulting from the permanent channelization.

Nevada and the United States then joined in a motion seeking to have the district court withdraw that part of its opinion and judgment pursuant to Fed.R. Civ.P. 60(b), on the ground that there had been no "case or controversy" between the defendants as required by article III of the United States Constitution. On January 22, 1980, the district court denied the motion by written order; the United States then pursued this appeal.

---

* Honorable Terry J. Hatter, Jr., United States District Judge for the Central District of California, sitting by designation.

1. The decision below is Peterson v. Morton, 465 F.Supp. 986 (D.Nev.1979).

Nevada now maintains that the issues with respect to ownership of the 90 acres were properly reached and correctly decided below. At oral argument before this court, counsel for Nevada took the position that it was appropriate for the district court to consider the claim of Nevada because the record amounted to an actual adversarial presentation of the question of title as between the United States and Nevada. Counsel nevertheless conceded that Nevada never intentionally placed any such claim in issue.

■ An exhaustive review of the record below supports our conclusion that this claim was never actually litigated by the parties. Nevada never asserted any cross-claim against the United States as it could have done under Federal Rule of Civil Procedure 13(g). Such cross-claims are permissive rather than mandatory. Fed.R.Civ.P. 13(g) states: "A pleading *may* state as a cross-claim any claim by one party against a co-party arising out of the transaction that is the subject matter . . . of the original action . . . ." (emphasis added). *Compare* Fed.R.Civ.P. 13(a) (compulsory counterclaims), 13(b) (permissive counterclaims). 6 Wright & Miller, Federal Practice and Procedure § 1431 at 164 (1971). Thus, if such a claim is neither asserted nor litigated, the parties cannot be barred from asserting it in a later action by principles of res judicata, waiver, or estoppel. *Augustin v. Mughal*, 521 F.2d 1215, 1216 (8th Cir. 1975) (a party to an action having a claim in the nature of a cross-claim has the option to pursue it in an independent action); 6 Wright & Miller, *supra*, § 1431 at 164; Rest. of Judgments § 82 at 384–85;[2] Rest. (Second) of Judgments § 82 at 39–40 (Tent. Draft No. 2, April 15, 1975). See also *Hellenic Lines, Ltd. v. The Exmouth*, 253 F.2d 473, 477 (2d Cir.), *cert. denied sub nom. American Export Lines, Inc. v. Hellenic Lines, Ltd.*, 356 U.S. 967, 78 S.Ct. 1006, 2 L.Ed.2d 1074 (1958), refusing to apply issue preclusion because the parties had not been sufficiently adverse in prior litigation.

■ The most that Nevada did in this case with respect to any claim independent of the land purchase contract, was to indicate that it would protect its position in light of the decision of the United States Supreme Court in *Corvallis, supra*. Although this case remained in the briefing stage for many months following trial, Nevada addressed the merits of any claim against the United States only in the most cursory fashion. The United States never saw any need to respond; discussion of the complex issues involved was limited to a single footnote in its post-trial brief. The record demonstrates that the United States and Nevada were at all times presenting a united front in defending against the Petersons' claim. This strategic decision not to litigate the question of title as between themselves was eminently reasonable in view of their belief at the time that the land sale contract made any such determination unnecessary. Nevada made it clear in the record that the now disputed 90-acre segment was such an insignificant part of the total land purchase that the price would not be reduced even if title were to be quieted in Nevada rather than the United States. Indeed, Nevada informed the district court that it only sought to "preserve" its rights under *Corvallis* in case the Petersons prevailed as against the United States; in that event, the precise nature of Nevada's interest would have become an important issue vis-a-vis the Petersons. The scope of this action was limited to determination of the Petersons' claim and did not include any claim, or adversity of any kind, between Nevada and the United States.

Thus, while the parties remain free to litigate the matter, when they were before the trial court they desired the same result and had no conflicting interests. The trial

---

2. The situation is quite similar to one of the illustrations used:

> 5. A brings a bill against B and C asking for partition of land on the ground that A, B and C are tenants in common. B and C successfully defend on the ground that A had no interest, setting up B's ownership to the entire tract. The judgment has no effect upon C's claim to the land in an action between B and C.

Rest. of Judgments § 82 at 388.

**364**

court was therefore deprived of the "clash of adverse parties" which "sharpens the presentation of issues upon which the court so largely depends for illumination of difficult ... questions." *GTE Sylvania, Inc. v. Consumers Union*, 445 U.S. 375, 100 S.Ct. 1194, 1199, 63 L.Ed.2d 467 (1980), *quoting O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974).

That portion of the district court's opinion and judgment deciding title as between the United States and Nevada should be vacated. The case is remanded for entry of such an order.