50 F.3d 16
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellant,
v.
Ronald BENNETT, Defendant-Appellee.
 No. 94-30025.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 9, 1994.*
Decided March 9, 1995.
 
 Before: NOONAN, O'SCANNLAIN, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 The United States appeals the district court's award of a downward departure from the Sentencing Guidelines to Ronald Bennett for his assistance to the judicial system. We have jurisdiction pursuant to 18 U.S.C. Sec. 3742(b). We vacate the sentence and remand the case for resentencing.[1]
 
 
 3
 * After searching a parcel of property in Olympia, Washington, police uncovered a marijuana growing operation. Evidence at the site led to the arrest of Mark Hanna, an attorney. With Hanna's cooperation, the police uncovered several other growing sites and arrested six other participants, including appellee Ronald Bennett.
 
 
 4
 Every codefendant except Bennett cooperated with the government and pled guilty. The information they provided to the government corroborated much of that already provided by Hanna and pointed to Bennett as the manager of the marijuana growing operation. All of the codefendants received motions from the government for downward departures from the Sentencing Guidelines pursuant to section 5K1.1; they received sentences ranging from 0 to 4 years in prison.
 
 
 5
 Although the government attempted to negotiate a plea with Bennett, he refused to cooperate. Ultimately, he was charged in a nine-count indictment with various narcotics offenses. On the morning that his trial was scheduled to begin, Bennett pleaded guilty to all nine charges. Bennett's sentencing hearing was scheduled for October 15, 1993.
 
 
 6
 In the interim, the district court rejected a pre-indictment plea agreement entered into by Hanna that recommended a sentence of between 5 and 7 years. The court delayed sentencing in order to gather more information on Hanna. At the court's request, Bennett provided that information, first to a probation officer and then in testimony before the court at Hanna's rescheduled sentencing hearing. According to Bennett, it was Hanna's idea to set up the marijuana growing operation. Among other things, Bennett asserted that Hanna had misrepresented his profits from one of the grows, and that he provided Bennett with legal advice on how to avoid detection by the police. Finally, Bennett claimed that Hanna had supplied marijuana to fellow attorneys and law school classmates. On the basis of Bennett's testimony, the probation officer eventually adjusted Hanna's suggested sentencing range from 87 to 108 months in prison to 108 to 135 months. The court denied the government's motion for a section 5K1.1 downward departure and sentenced Hanna to 122 months in prison.
 
 
 7
 The probation officer determined that Bennett's sentencing range was 188 to 235 months. The government did not recommend a downward departure under section 5K1.1. The district court, however, departed downward from this range and sentenced Bennett to 120 months in prison, the statutory minimum for his offenses. The district court based its decision on Bennett's assistance to the court, not the prosecution. The court made the following findings:
 
 
 8
 Mr. Bennett's cooperation, through interviews with United States probation officers and through testimony here, allowed this court to be more fully advised as to the role of his codefendant, attorney Mark Hanna.
 
 
 9
 Before Mr. Bennett's cooperation, not the DEA, not the United States Attorney or this court was aware of the long-term involvement of a member of the bar of this state and an employee of Pierce County Department of Assigned Counsel in the growing and distribution of marijuana in this area. It's this court's opinion that defendant Mr. Bennett's cooperation has benefited society and this community by exposing the scope of illegal activities of Mark Hanna.
 
 
 10
 * * *
 
 
 11
 * * *
 
 
 12
 And so it is not based upon--this is a negative--it is not based upon substantial cooperation or information to [the prosecutor's office], but to this court at this court's request, through my probation officers.
 
 II
 
 13
 Pursuant to section 5K2.0 of the Sentencing Guidelines, a district court may depart downward from the applicable sentencing range prescribed by the Guidelines only if it finds "aggravating or mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. Sec. 3553(b); Burns v. United States, 501 U.S. 129, 133 (1991). The question of whether circumstances warranting a departure were adequately taken into consideration under the Guidelines is reviewed de novo. United States v. Takai, 941 F.2d 738, 742 (9th Cir.1991).
 
 
 14
 Under section 5K1.1, a downward departure from the applicable Guidelines range is appropriate when "the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense." In addition, the government must file a section 5K1.1 motion recommending a downward departure. United States v. Goroza, 941 F.2d 905, 908 (9th Cir.1991). Because the Sentencing Commission adequately considered, and indeed included, assistance in the prosecution of other offenders in section 5K1.1, downward departure on this basis is inappropriate under section 5K2.0.
 
 
 15
 In this case, the district court based its decision to depart on Bennett's assistance to the judicial system, as opposed to the prosecution. However, in United States v. Shrewsberry, 980 F.2d 1296 (9th Cir.1992), cert. denied, 114 S.Ct. 120 (1993), this court held that a sentencing judge generally may not do under section 5K2.0 what the prosecution declines to do under section 5K1.1. In Shrewsberry, the defendant cooperated with the government, and in return the government dismissed two counts against her. The defendant did not receive a section 5K1.1 motion from the government recommending downward departure. The defendant thus requested a downward departure from the district court pursuant to section 5K2.0. The district court held that it lacked authority to depart for this reason, and this court agreed. See id. at 1297-98. See also United States v. Lockyer, 966 F.2d 1390, 1391-92 (11th Cir.1992) (holding that district court did not err in refusing to depart downward for cooperation with the judicial system as opposed to the prosecution).
 
 
 16
 Shrewsberry expressly declined to follow United States v. Garcia, 926 F.2d 125 (2d Cir.1991). In Garcia, the Second Circuit upheld the district court's downward departure under section 5K2.0 on the basis of substantial assistance to the judicial system. The defendant, by pleading guilty early and testifying against his codefendants, provided substantial assistance to the court by breaking open a multi-defendant case and reducing the court's congested docket. Not only has Garcia been rejected by this circuit, but Bennett's conduct would not merit a departure regardless. Contrary to breaking open a multi-defendant case, Bennett refused to plead guilty long after the case had been broken open. By waiting until the morning of his trial to plead guilty, Bennett forced the court, and the government, to waste valuable time and resources in preparation for trial.
 
 
 17
 Bennett attempts to distinguish Shrewsberry on the ground that the defendant had already received the agreed upon consideration in return for her cooperation and thus the section 5K1.1 motion would have been an unwarranted bonus. This distinction does little for Bennett, however. Until the morning of trial, enlisting Bennett's cooperation simply was not an option. After he decided to plead guilty, Bennett did offer to provide an interview with the prosecution concerning Hanna. Bennett's refusal to answer any questions regarding other participants in the operation, though, would have made it impossible to check his testimony for corroboration. The government understandably refused Bennett's offer.
 
 
 18
 Under Shrewsberry, the district court cannot subvert the government's decision not to file a section 5K1.1 motion absent evidence of "governmental bad faith or arbitrariness." Id. at 1297. Although the district court had previously expressed displeasure with the government's information regarding Hanna when it rejected Hanna's plea bargain, it made no finding that the government's decision not to recommend downward departure for Bennett was arbitrary or in bad faith. From the government's perspective, there was little reason to recommend a downward departure. Five of Bennett's codefendants had already been sentenced, and Hanna had already pled guilty. Bennett clearly had a strong incentive to lie in order to take revenge on Hanna, the man who had turned him in. Moreover, Bennett's testimony was not corroborated by his codefendants' previous statements.
 
 
 19
 United States v. Goroza, 941 F.2d 905, 909 (9th Cir.1991) is analogous to this case. In Goroza, the defendant cooperated with the government by providing information regarding his codefendants. However, the prosecution declined to file a section 5K1.1 motion because it believed the testimony the defendant had given them was false. The defendant was subsequently acquitted of perjury charges stemming from this testimony. Nonetheless, the court stated that "[w]hether or not the district court agrees with the government's determination, and regardless of the factors on which the government's determination is based, so long as the government does not exceed the bounds of its discretion, departure under 5K2.0 for cooperation with the government is inappropriate." Id. at 909. In the instant case, the district court may not have agreed with the government's assessment of Bennett. However, given Bennett's long-standing refusal to cooperate, his refusal to testify about anyone other than Hanna, and the lack of corroboration for some of his statements, we cannot say that the government abused its discretion in its handling of Bennett.
 
 
 20
 In light of the record before us, we conclude that the trial judge would likely have substantial difficulty in putting out of his mind the views and findings we have found to be inappropriate. See United States v. Sears, Roebuck & Co., 785 F.2d 777, 780 (9th Cir.), cert. denied, 479 U.S. 988 (1986). Accordingly, this case on remand must be reassigned for resentencing before a different judge.
 
 III
 
 21
 The sentence appealed from is VACATED. The case is REMANDED to the Chief Judge of the United States District Court for the Western District of Washington for reassignment to another district judge for purposes of resentencing.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit R. 36-3
 
 
 [1]
 By published opinion separately filed this date, we also vacate the sentence and remand for resentencing before a different judge in a related case, United States v. Hanna, No. 93-30457