50 F.3d 16
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard Allen BERGER, Defendant-Appellant.
 No. 94-30128.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 13, 1995.
Decided March 15, 1995.
 
 1
 Before: WRIGHT and BRUNETTI, Circuit Judges, and GONZALEZ,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Berger and a confederate, Vales, burglarized a house. One of the items stolen was a pistol. Berger was convicted of the burglary in state court. Because he had prior state felony convictions, he was also convicted of one count of 18 U.S.C. Sec. 922(g)(1) and sentenced to the 15-year mandatory minimum sentence required by 18 U.S.C. Sec. 924(e). Berger appeals his conviction and sentence. We have jurisdiction under 28 U.S.C. Sec. 1291 and affirm.
 
 
 4
 I. Effect of the Restoration of Berger's Civil Rights.
 
 
 5
 A. Restoration of Civil Rights.
 
 
 6
 18 U.S.C. Sec. 922(g)(1) makes it a federal crime for a person convicted of a crime punishable by more than one year imprisonment to possess a gun. Under 18 U.S.C. Sec. 921(a)(20), however,
 
 
 7
 [a]ny conviction ... for which a person has been pardoned or has had civil rights restored shall not be a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.
 
 
 8
 Berger contends that the state of Washington has restored his civil rights, including the right to possess a pistol.
 
 
 9
 United States v. Dahms, 938 F.2d 131 (9th Cir.1991), sets out a two-part test for determining if a restoration of rights under state law falls within the language of 18 U.S.C. Sec. 921(a)(20).
 
 
 10
 Initially, we must determine whether [defendant's] civil rights were substantially restored under [the law of the state of conviction]. If they were, we must determine whether that law expressly restricts his right to possess firearms.... We look to the whole of state law in determining whether his civil rights were restored....
 
 
 11
 Dahms, 938 F.2d at 133.
 
 
 12
 Berger's civil rights were restored pursuant to Wash.Rev.Code ("RCW") 9.96.050. That section provides that the parole board "may make a final order of discharge," which "shall have the effect of restoring all civil rights lost by operation of law upon conviction." Thus, Berger passes the first part of the Dahms test.
 
 
 13
 "In determining whether a restoration of civil rights expressly prohibits firearm possession, the district court must look to the whole of state law at the time of the restoration." United States v. Cardwell, 967 F.2d 1349, 1351 (9th Cir.1992). However, when civil rights are restored by means of a certificate, then the restoration "expressly prohibits" firearms possession only if the certificate states that the right to carry a gun is not restored. United States v. Herron, No. 93-30427, slip op. 781, 788 (9th Cir. Jan. 19, 1995). In this case, Berger's certificate does state that the right to carry a gun is not restored, so the Herron requirement is met.[1]
 
 
 14
 Herron did not decide whether a person can be convicted under Sec. 922(g)(1) merely because that person's certificate says that he or she cannot carry firearms, or whether it is also necessary that state law forbid that person from carrying firearms. Because this question was not briefed and is not necessary to the resolution of the appeal, we do not decide it here. Instead, we assume without deciding that Berger can only be convicted under Sec. 922(g)(1) if state law also forbids him from carrying firearms.
 
 
 15
 B. The Firearms Prohibition of RCW 9.41.040(1)
 
 
 16
 RCW 9.41.040(1) makes it unlawful for persons convicted of "a crime of violence or of a felony in which a firearm was used or displayed" to possess a short firearm or pistol. There appears to be no other Washington statute that would forbid Berger from carrying a pistol. Berger contends that RCW 9.41.040(1) does not apply to persons who, like him, have had their civil rights restored under RCW 9.96.050.
 
 
 17
 No published Washington judicial decision has addressed this issue directly. However, in State v. Thomas, 35 Wash.App. 161, 665 P.2d 914 (1983), the defendant had been convicted of a crime that triggered the handgun prohibition contained in a prior version of RCW 9.41.040(1), and his civil rights had been restored pursuant to RCW 9.92.066 rather than RCW 9.96.050. When someone's civil rights are restored under RCW 9.92.066, that person is "released from all penalties and disabilities resulting from the offense or crime of which he has been convicted." Despite this language, which is broader than the language of RCW 9.96.050, the Washington appellate court held that the defendant could be prosecuted under the prior version of RCW 9.41.040(1) for carrying a pistol.
 
 
 18
 Furthermore, RCW 9.41.040 explicitly specifies certain conditions under which convicted persons can recover the right to carry handguns. For example, RCW 9.41.040(3) provides that if a conviction precluding handgun ownership is the subject of a "pardon, annulment, certificate of rehabilitation, or equivalent procedure based on a finding of rehabilitation or innocence," then the handgun prohibition of RCW 9.41.040(1) does not apply any more. By negative implication, the handgun prohibition continues to apply whenever none of the exceptions in RCW 9.41.040 is met. Consequently, under Washington law, a person whose civil rights have been restored under RCW 9.96.050 is still subject to the prohibition on carrying handguns contained in RCW 9.41.040(1).
 
 C. Application of RCW 9.41.040(3) to Berger
 
 19
 RCW 9.41.040(3) provides that persons whose convictions are removed by a "pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of ... rehabilitation" are exempt from the handgun prohibition of RCW 9.41.040(1). Berger received a certificate captioned "Final Discharge Restoring Civil Rights." He contends that this certificate is a certificate of rehabilitation or other equivalent procedure in the sense of RCW 9.41.040(3), so that his right to possess handguns was restored under Washington law.
 
 
 20
 The phrase "certificate of rehabilitation" appears only three times in the Washington code and is nowhere defined there. No code section empowers any state agency to grant such a certificate.[2] No published Washington case construes the phrase "certificate of rehabilitation" in the context of 9.41.040(3). Because of this lack of authority, and because of the use of the word "equivalent" in RCW 9.41.040(3), we apply the noscitur a sociis[3] rule of construction to determine the meaning of "certificate of rehabilitation." Application of this rule leads to the conclusion that a "certificate of rehabilitation" is something similar to an annulment or a pardon, constituting an exceptional determination that the defendant has been fully reintegrated into society.
 
 
 21
 Berger points out that under the indeterminate sentencing system applicable to his prior convictions, the parole board could release him before the termination of his maximum term only if "in its opinion his rehabilitation has been complete." RCW 9.95.100. Thus, when Berger was released from prison, there was in a sense a "finding of rehabilitation" as required by RCW 9.41.040(3).
 
 
 22
 However, there is no reason to suppose that "rehabilitation" in RCW 9.95.100 means the same thing as "rehabilitation" in RCW 9.41.040(3). After all, the finding of rehabilitation required by RCW 9.95.100 must be made while the individual is in prison. Furthermore, even assuming that Berger was found to be rehabilitated in the sense of RCW 9.41.040(3) when he was released from prison, the certificate Berger received, being captioned "Final Discharge Restoring Civil Rights," is not literally a certificate of rehabilitation. It is also not equivalent to a pardon, annulment, or certificate of rehabilitation, in that certificates like Berger's are routinely granted upon successful completion of parole. For this reason, Berger's certificate was not a "pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of ... rehabilitation," and thus he does not fall into the exception of RCW 9.41.040(3).
 
 
 23
 In summary, Berger's certificate restoring civil rights stated that his right to carry firearms was not restored. Also, Washington law forbade Berger from carrying a handgun in spite of his restoration of civil rights. Consequently, the exception of 18 U.S.C. Sec. 921(a)(20) does not apply to him.
 
 
 24
 II. Sufficiency of the Evidence.
 
 
 25
 Berger contends that the evidence before the jury was insufficient to support their guilty verdict because it could not support a finding of possession. We affirm if some rational jury could have found all the essential elements of the crime beyond a reasonable doubt. United States v. Terry, 911 F.2d 272, 278 (9th Cir.1990).
 
 
 26
 " 'A person has possession of something if the person knows of its presence and has physical control of it, or has the power and intention to control it.' " Terry, 911 F.2d at 280 (quoting Manual of Model Criminal Jury Instructions for the Ninth Circuit Sec. 3.16 (1989)). Proximity to the weapon and knowledge of its presence are by themselves insufficient evidence to establish possession. United States v. Vasquez-Chan, 978 F.2d 546, 550 (9th Cir.1992).
 
 
 27
 The testimony most strongly favoring an inference of possession is the following: At about 10:00 a.m., Berger's truck was parked near the burglarized house. At a disputed time between about 11:00 a.m. and 11:45 a.m., Berger and his confederate Vales were discovered by a passing motorist who knew the people who lived in the house they were burglarizing. To scare away the motorist, Vales aimed a pistol at him. At that time, Berger was at Vales' side, pointing at the motorist.
 
 
 28
 Berger then drove his truck away from the house, with Vales riding as a passenger. Police gave chase, alerted by the passing motorist. Shortly before Berger and Vales surrendered, a police officer observed through the rear window of their truck cabin that they both manipulated something on the truck seat between them, and then Vales reached down to the floor.
 
 
 29
 After the two surrendered, police found a loaded pistol on the floor, leaning against the center divider of the cabin on the passenger side. That pistol had been taken from the house, where the owner had kept it unloaded. Police also found bullets for the pistol, a pry bar, a glove, a claw hammer, and a saw on the floor on the passenger side of the cabin. After being arrested and informed that he was facing first degree burglary charges because of Vales' use of the gun, Berger told an officer "we only took the gun."
 
 
 30
 Based on all this evidence, a rational jury could have found the element of possession beyond a reasonable doubt.
 
 
 31
 III. The Jury Instructions.
 
 
 32
 Berger asked the district court to give a jury instruction stating:
 
 
 33
 The fact that you may conclude that another person may have taken the firearm during the course of the burglary in which defendant participated is insufficient to find the defendant guilty of the crime now charged. You may not rely on such "guilt by association" to find the defendant guilty. As stated in previous instructions, you must find the defendant had the power and intent to exercise dominion and control over the firearm.
 
 
 34
 He contends that it was error to refuse this instruction. We review de novo whether the jury instructions adequately covered the defense theory of the case. United States v. Medrano, 5 F.3d 1214, 1218 (9th Cir.1993).
 
 
 35
 Berger appears to be objecting that the jury was inadequately instructed that mere presence was not enough to convict. However, that theory was adequately covered by the district court's own "mere presence" instruction. That instruction read: "Mere presence in the vicinity of the firearm is not alone sufficient to establish possession, but may be considered along with other evidence." In United States v. Garcia-Cruz, 978 F.2d 537, 540 (9th Cir.1992), cert. denied, 113 S.Ct. 2453 (1993), a similar instruction was held to have "fairly and adequately covered the issues presented." Berger had no right to a mere presence instruction of his own phrasing. Medrano, 5 F.3d at 1218. Consequently, it was not error for the district court to refuse Berger's proposed instruction.
 
 
 36
 IV. The Effect of the Prior Burglaries on Sentencing.
 
 
 37
 18 U.S.C. Sec. 924(e) mandates a fifteen-year minimum sentence for persons convicted of violating Sec. 922(g) who have three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." The district court gave Berger this fifteen-year minimum sentence. Berger contends that two of the prior convictions were not based on offenses "committed on occasions different from one another."
 
 
 38
 The two offenses Berger is challenging were burglaries of adjacent residential properties committed one after the other with two confederates. In United States v. Antonie, 953 F.2d 496, 498 (9th Cir.1991), cert. denied, 113 S.Ct. 138 (1992), defendant had committed an armed robbery in Downey, California, at 9:45 p.m. and another in the adjacent community of Bellflower at 10:25 p.m. We found that the two armed robberies were "committed on occasions different from one another" for purposes of 18 U.S.C. Sec. 924(e). Id. at 499. In doing so, we cited with approval United States v. Tisdale, 921 F.2d 1095 (10th Cir.1990), cert. denied, 112 S.Ct. 596 (1991), where defendant broke into a shopping mall, burglarized two businesses and a post office there, and was found to have committed three distinct crimes for 18 U.S.C. Sec. 924(e) purposes. We thus find that Berger's two burglaries were "committed on occasions different from one another."
 
 
 39
 AFFIRMED.
 
 
 
 *
 The Honorable Irma E. Gonzalez, United States District Judge for the Southern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Berger contends that the parole board lacked the authority to write on his certificate that he could not carry firearms because RCW 9.96.050 requires that the certificate state that all civil rights are restored. However, as discussed below, Washington law forbade Berger from carrying handguns even after he received his certificate. Thus, under Washington law, carrying handguns is not a "civil right" which is restored by a certificate issued pursuant to RCW 9.96.050
 
 
 [2]
 In contrast, Cal.Penal Code Sec. 4852.13, enacted in 1943, empowers the Superior Court of California to grant certificates of rehabilitation. When granting such a certificate, the court must simultaneously recommend that the Governor grant a pardon. Id
 The language "pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of ... rehabilitation" in RCW 9.41.040(3) is very similar to language in Fed.R.Evid. 609(c).
 
 
 [3]
 "The maxim noscitur a sociis, that a word is known by the company it keeps, while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid giving an unintended breadth to the Acts of Congress." Jarecki v. G.D. Searle & Co., 367 U.S. 303, 307 (1961)