50 F.3d 16
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Robert L. SANDS, and, d/b/a Sands and Associates, Plaintiff-Appellee,
v.
Stephen D. REIMERS, an individual; and d/b/a Hyperbaric
Therapy, Inc., and d/b/a Reimers Engineering,
Inc., Defendant-Appellant.
 No. 93-56250.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 9, 1995.*
Decided March 17, 1995.
 
 Before: BROWNING, BOOCHEVER, and BEEZER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 I. Personal Jurisdiction over HTI and Reimers
 
 
 3
 The district court correctly determined it had personal jurisdiction over HTI. Moreover, because we affirm the district court's conclusion that Reimers and HTI were alter egos, see infra part III, the finding of personal jurisdiction over HTI also established jurisdiction over Reimers. See Flynt Distributing Co. v. Harvey, 734 F.2d 1389, 1393 (9th Cir.1984).
 
 
 4
 HTI's contacts with California were sufficient to satisfy the "minimum contacts" test for personal jurisdiction set forth in Data Disc, Inc. v. Systems Technology Assocs., 557 F.2d 1280, 1286 (9th Cir.1977) (citing Cal.Code Civ.Pro. Sec. 410.10).[1]
 
 
 5
 The first element of this test is satisfied because HTI "performed ... act[s] relating to the contract at issue by which it purposefully availed itself of the privilege of conducting business in California." Thos. P. Gonzalez Corp. v. Consejo Nacional de Producion, 614 F.2d 1247, 1254 (9th Cir.1980). The negotiations that eventually led to the creation of the joint business venture began in California. See Data Disc, 557 F.2d at 1289 (noting that a strong factor in favor of jurisdiction was the fact that contract at issue had been partially negotiated in California). HTI had an office in California, and the district court found Sands relocated to this office in reliance on the contract with HTI. Cf. id. at 1288 (stating that inducement of reliance in California was enough to satisfy the first two elements of the jurisdictional test). Michael Smookler, who was affiliated with Reimers Engineering, performed marketing activities for HTI from Reimers Engineering's California office.[2] The meeting in which HTI repudiated the contract also occurred in California.
 
 
 6
 The remaining two requirements for personal jurisdiction have been met as well. Sands's breach of contract claim clearly arose out of these same California contacts. Asserting jurisdiction over HTI in California is reasonable: the burden upon HTI will not be excessive since it has an office in California; California's interest is strong because the case involves a California resident and a corporation doing business in California; and much of the relevant evidence (e.g., whether Sands performed his obligations under the contract) is found in California. See generally Paccar Int'l v. Commercial Bank of Kuwait, 757 F.2d 1058, 1065-66 (9th Cir.1985) (listing factors relevant to a determination of reasonableness).
 
 II. Res Judicata
 
 7
 Under Reimers's res judicata theory, Sands should have asserted his breach of contract claim as a counterclaim in the Virginia action. Res judicata normally bars a claim that should have been pled as a compulsory counterclaim in a previous action.[3] See Dragor Shipping Corp. v. Union Tank Car Co., 378 F.2d 241, 244 (9th Cir.1967). However, a party need not plead an otherwise compulsory counterclaim if the claim is the subject of another pending action. Fed.R.Civ.Pro. 13(a)(1). When this exception applies, the party failing to assert the counterclaim is not barred by res judicata. See Union Paving Co. v. Downer Corp., 276 F.2d 468, 470 (9th Cir.1960); see also 18 Wright Sec. 4414, at 116 (noting that if a case falls within an exception to the compulsory counterclaim rule, the defendant "should be left free to assert his claims in a court and at a time of his own choosing"). Accordingly, because Sands had filed this breach of contract action in California before Reimers brought suit in Virginia, Reimers's res judicata argument fails.
 
 III. Alter Ego
 
 8
 Substantial evidence supports the trial court's conclusion that Reimers was the alter ego of HTI because (1) there was such a unity of interest and ownership that their separate personalities no longer existed, and (2) treating the acts as those of HTI alone would create an inequitable result. Associated Vendors, Inc. v. Oakland Meat Co., 26 Cal.Rptr. 806, 813 (Ct.App.1963).
 
 
 9
 Reimers's own testimony supports the finding of an alter ego relationship. HTI had no assets when the contract with Sands was finalized. The initial deposit in HTI's bank account came from Reimers's personal account. All payments to Sands, including those under the written contract, were made from Reimers's personal checking account. In fact, all money used to fund the venture came from Reimers's personal account. Furthermore, Reimers has treated HTI's assets as his own: he is in possession of the technical drawings Sands prepared for HTI, and the technical data regarding the venture's main product is in Reimers's computer. Reimers is the sole shareholder of HTI and concedes he had essentially total control over the corporation.
 
 
 10
 Failure to pierce the corporate veil would lead to an inequitable result. Given HTI's total lack of assets, Sands would recover none of the damages to which he is entitled because of HTI's breach of contract. The existence of an unsatisfied creditor does not alone create an inequitable result; it can be enough, however, when coupled with proof that the corporation was undercapitalized, as HTI clearly was. See id. at 816. The fact that Reimers controlled HTI when it breached its contract with Sands undermines any countervailing equities in Reimers's position.
 
 
 11
 Reimers argues that the trial court erred because it failed to find bad faith or fraud. However, bad faith or fraud is not required to support a finding of an alter ego relationship. The Associated Vendors court simply observed that "bad faith in one form or another is an underlying consideration and will be found in some form or another in those cases" where a court pierces the corporate veil. Id. at 813. The evidence in this case demonstrates bad faith "in some form or another." The district court accepted as credible Sands's testimony that he looked to Reimers personally to fulfill the promises that were made in the business arrangement. If Reimers really thought he had no obligations to Sands, payments to Sands should not have come from Reimers's personal account, and Reimers should have capitalized HTI adequately. For Reimers to now hide behind the veil of HTI and disclaim any obligation to Sands amounts to bad faith.
 
 
 12
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The "minimum contacts" test has three requirements:
 (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (2) The claim must be one which arises out of or results from the defendant's forum-related activities. (3) Exercise of jurisdiction must be reasonable.
 Id. at 1287.
 
 
 [2]
 We reject Reimers's argument that no evidence indicated whether HTI authorized Smookler's activities on its behalf. Reimers conceded he basically controlled both Reimers Engineering and HTI, and the evidence indicates Reimers personally supervised Smookler
 
 
 [3]
 If Reimers's breach of contract claim was a permissive counterclaim in the Virginia action, res judicata does not bar the claim in this suit--otherwise the "permissive" counterclaim would have been effectively compulsory. See Painter v. Harvey, 863 F.2d 329, 333 (4th Cir.1988); 6 Charles A. Wright et al., Federal Practice and Procedure Sec. 1410, at 59 (2d ed. 1990) [hereinafter Wright] (stating that claim preclusion "never" bars a party from suing independently on a permissive counterclaim); cf. Peterson v. Watt, 666 F.2d 361, 363 (9th Cir.1982) (holding that because cross-claim was permissive, res judicata did not bar a party from asserting the claim in a subsequent action)