50 F.3d 16
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Colleen M. BARCUS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Norma A. GILHAM, Defendant-Appellant.
 Nos. 94-30119, 94-30129.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 10, 1995.
Decided March 15, 1995.
As Amended May 19, 1995.
 
 Before: WRIGHT, HALL, and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Colleen Barcus and Norma Gilham appeal their convictions and sentences for conspiracy to distribute cocaine and possession with intent to distribute cocaine, in violation of 21 U.S.C. Secs. 841(a)(1) and 846. We have jurisdiction pursuant to 21 U.S.C. Sec. 1291, and we affirm.
 
 BACKGROUND
 
 3
 On April 17, 1993, Bureau of Indian Affairs Officer Mike Parker received a tip from a confidential informant ('CI'). The CI stated that Norma Gilham was in Tacoma, Washington, with a companion, attempting to buy cocaine. Parker relayed this information to Glacier County Sheriff's Deputy Wayne Dusterhoff. Based on other information they had received, Dusterhoff and Parker had reason to believe that the companion was Colleen Barcus, and that the CI's tip was reliable. On the basis of this information, the Glacier County Sheriff's Office applied for and received a State of Montana search warrant for Gilham's vehicle. The Sheriff's Office then organized several law enforcement agencies to be on the lookout for the vehicle on U.S. Highway 2.
 
 
 4
 The next afternoon Montana Highway Patrolman Tony Cox, whom Dusterhoff had told of the warrant and the investigation, spotted the vehicle on Highway 2, just outside the Blackfeet Indian Reservation. He turned on his flashing colored lights and started after the car approximately one half mile outside of the Reservation. The car pulled over approximately one half mile inside the Reservation. Cox told Appellants that they were being stopped for speeding, and radioed Dusterhoff. Dusterhoff arrived within ten minutes, as did Parker. Dusterhoff then left to get the state warrant. During this time, Appellants were not handcuffed and no search was performed. The officers did not execute the state warrant, for fear it was not valid on the Reservation. They instead planned to procure a federal or tribal warrant. When Dusterhoff returned with the state warrant, he started reading it to Appellants to apprise them of the real reason they were being detained. Before he could finish, and before a federal or tribal warrant could be obtained, Barcus jumped into Gilham's car and sped off. She drove at speeds of up to 120 miles per hour to avoid arrest, and proceeded to Lake Hurley, where she was seen throwing a white powdery substance into the lake. Numerous plastic bags with traces of cocaine were subsequently discovered. The car was towed to a holding facility, and a federal search warrant was obtained by the FBI. The search of the car pursuant to the federal warrant revealed traces of cocaine throughout the car and in Appellants' purses, $1,600 in the glove compartment, and handwritten notes in both purses that allegedly are evidence of drug transactions.
 
 
 5
 Appellants were indicted on charges of conspiracy to possess cocaine with intent to distribute and possession of cocaine with intent to distribute in violation of 21 U.S.C. Secs. 846 and 841(a)(1). The district court denied two motions to suppress evidence seized from Gilham's automobile. Appellants were convicted by a jury, in a joint trial, on all counts. Gilham was sentenced to concurrent terms of 63 months on each count. Barcus was sentenced to 78 months. They both appeal their convictions as well as their sentences.
 
 I. Fourth Amendment Challenge
 
 6
 Barcus and Gilham argue that the district court should have suppressed evidence (cocaine and drug paraphernalia) seized from Gilham's car, because the stop of their car violated the Fourth Amendment. We disagree. Even if the initial stop was improper, the challenged evidence is admissible because it fits within the 'independent source' exception to the fruit of the poisonous tree doctrine.
 
 
 7
 a. Initial Stop
 
 
 8
 The initial stop was supported by probable cause. The CI who provided the initial tip had proven to be reliable several times in the past. As this circuit has noted: "If the informant has provided accurate information on past occasions, he may be presumed trustworthy on subsequent occasions." United States v. Angulo-Lopez, 791 F.2d 1394, 1397 (9th Cir. 1986). The Fourth Amendment does not require police to obtain a warrant to search an automobile when, as here, they have probable cause to believe it contains contraband or evidence of a crime. Arkansas v. Sanders, 442 U.S. 753, 760 (1979); United States v. Hatley, 15 F.3d 856, 858 (9th Cir. 1994). Further, because Montana Highway Patrolman Cox had probable cause to make the stop based on a belief there would be evidence of drug trafficking activity, this was not a pretextual stop, as Appellants argue. See United States v. Mota, 982 F.2d 1384, 1386 (9th Cir. 1993).
 
 
 9
 The stop may have been improper because Patrolman Cox lacked jurisdiction to make the stop on the Blackfeet Reservation, however. Appellants note that the Blackfeet have not ceded general jurisdiction to the state of Montana, and that Cox's cross-deputization is restricted to enforcement of traffic laws on the Reservation. On the other hand the stop, which was supported by probable cause, was initiated outside the Reservation. The doctrine of hot pursuit therefore may render the stop permissible. We do not need to reach this question, however. We agree with the district court that even if the initial stop was improper, the challenged evidence is admissible. The evidence fits within the 'independent source' exception to the fruit of the poisonous tree doctrine.
 
 
 10
 b. Independent Source Exception
 
 
 11
 Under the 'independent source' doctrine, evidence that is found not as a result of an illegal search or seizure, but by independent means, is admissible. See Sequra v. United States, 468 U.S. 796, 813-14 (1984) ("whether the initial entry was illegal or not is irrelevant to the admissibility of the challenged evidence because there was an independent source for the warrant under which that evidence was seized."). This exception applies in the present case.
 
 
 12
 Appellants contend that the federal warrant under which the search was conducted was tainted. That is, the probable cause supporting the issuance of that warrant was supplied by Barcus' actions in response to the allegedly illegal stop. It is true that FBI Special Agent Wilson's affidavit in support of the federal warrant contained information regarding events subsequent to the objectionable stop. This does not necessarily mean that evidence seized pursuant to the warrant must be suppressed, however.
 
 
 13
 This circuit has ruled that evidence seized pursuant to a tainted warrant need not be suppressed if, after excising the improper information from the affidavit submitted in support of the warrant, the remaining, untainted evidence still provided probable cause sufficient to issue the warrant. "The mere inclusion of tainted evidence in an affidavit does not, by itself, taint the warrant or the evidence seized pursuant to the warrant. Rather, a reviewing court should excise the tainted evidence and determine whether the remaining untainted evidence would provide a neutral magistrate with probable cause to issue a warrant." United States v. Reed, 15 F.3d 928, 933 (9th Cir. 1994) (citations omitted).
 
 
 14
 As described above, there was sufficient evidence to provide probable cause to search Gilham's vehicle before the initial stop took place. The affidavit submittted in support of the federal warrant included not only evidence resulting from the objectionable stop, but also all of that pre-stop information that had served as the basis for the initial warrant. The federal warrant thus was supported by probable cause wholly apart from any information obtained as a result of the initial stop. Because the excised version of the affidavit was sufficient to establish probable cause for the warrant, we hold that the independent source exception applies in the instant case. The evidence is therefore admissible.[1]
 
 II. Admission of the Scraps of Paper
 
 15
 Scraps of paper found in Appellants' purses were admitted as "drug ledgers." Appellants argue that the papers, which contained mathematical equations and lists of names and numbers, should not have been admitted into evidence. Even if we assume that the district court erred by admitting the papers, we hold that the error was harmless in light of the overwhelming evidence against Appellants.
 
 III. Sufficiency of the Evidence
 
 16
 We also reject Appellants' assertion that the evidence was insufficient to support their convictions. In reviewing the sufficiency of the evidence, we must uphold the convictions if, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Reyes-Alvarado, 963 F.2d 1184, 1189 (9th Cir.1992). Appellants argue that the essential elements of conspiracy were not proven. The elements of conspiracy are: 1) an agreement to accomplish an illegal objective; and 2) the requisite intent necessary to commit the underlying substantive offense. United States v. Penagos, 823 F.2d 346, 348 (9th Cir.1987), modified by United States v. Shabani, 115 S.Ct. 382 (1994). Appellants drove thousands of miles together to get the drugs; cocaine was found in both of their purses; Gilham owns the car and was the subject of the original CI tip, but it was Barcus who jumped in the car and sped off to get rid of the evidence. In sum, there was sufficient evidence to allow a rational trier of fact to conclude that these Appellants were working in concert to accomplish an illegal objective.
 
 IV. Sentencing Guidelines
 
 17
 Appellants also appeal their sentences on various grounds. They first argue that the district court erred in basing their sentences on a finding that they possessed with intent to distribute 500 grams of cocaine. The district court's factual findings in the sentencing phase are reviewed for clear error. United States v. Buenrostro-Torres, 24 F.3d 1173, 1174 (9th Cir.1994). Under the Guidelines, the sentencing judge must approximate the quantity of the controlled substance when the amount seized does not reflect the scale of the offense. U.S.S.G. Sec. 2D1.1 application note 12.
 
 
 18
 We hold that the district court did not clearly err in estimating the amount of cocaine to be 500 grams. First, on a scrap of paper found in Gilham's purse, the number 500 was divided by 28. Agent Clouse testified that this was the normal means of converting grams into ounces, which was consistent with the drug trade.[2] Second, the 500 figure from the note was corroborated by other evidence. Agent Wilson testified (and demonstrated) at the sentencing hearing that the empty containers found at the scene easily could have held 500 grams. Lastly, as the district court noted, the reason that the evidence of amount is not more reliable is because Barcus destroyed it. We agree that to allow her to benefit from that act would not "make a whole lot of sense."
 
 
 19
 Appellants also argue that the district court erred by not subtracting from the 500 grams the amount they intended for personal use. The district court cannot include the amount of drugs intended for personal use in its computation of the base offense level for possession with intent to distribute. United States v. Kipp, 10 F.3d 1463, 1466 (9th Cir.1994). However, in this case, the district court did not include personal-use amounts in his 500 gram determination. It is clear that the 500-gram figure he settled upon represented the amount he believed Appellants intended to sell. The issue of personal use was before him, having been brought up repeatedly by both Appellants. Yet he agreed completely with the findings of the officers and the probation department: "For the record here, I reaffirm my judgment ... that this number ... is an accurate number of what happened here."
 
 
 20
 Gilham also argues that the district court erred in not adjusting her sentence downward for her acceptance of responsibility or for her minor role in the offense. Gilham's statement at the sentencing hearing does at first blush appear to be an acceptance of responsibility. However, U.S.S.G. Sec. 3E1.1 application note 2, states that this adjustment is not meant for those who put the government to the burden of proving their factual guilt at trial, and then demonstrate remorse. Rather, the determination of whether the defendant has accepted responsibility "will be based primarily upon pre-trial statements and conduct." Id. Accordingly, the district court's refusal to grant this adjustment was not clearly erroneous. The district court's refusal to adjust Gilham's sentence downward under the minimal participant provision of U.S.S.G. Sec. 3E1.1 also was not clearly erroneous. There is much evidence to support the district court's denial, including the facts that the initial tip was focused upon Gilham, and that her car was used for the trip from Montana to Washington.
 
 CONCLUSION
 
 21
 For the foregoing reasons, we AFFIRM the judgment of the district court, with regard to both Appellants, in all respects.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We understand that this exception may mean that police sometimes benefit from illegal stops. In the instant case, for example, the stop prevented Appellants from driving on and hiding the evidence. This, however, is not a bar to the exception's application: "It may be that, if the agents had not entered the apartment, petitoners might have arranged for the removal or destruction of the evidence, and that in this sense the agents' actions could be considered the 'but for' cause for discovery of the evidence....The essence of the dissent is that there is some 'constitutional right' to destroy evidence. This defies both logic and common sense." Sequra, 468 U.S. at 816
 
 
 [2]
 The fact that this paper was not admissible at trial does not mean that it cannot be used for sentencing. To be used in sentencing, it must be reliable, and we find that it is. Agent Clouse's testimony, as well as the other corroborating evidence, indicates that this is a reasonable estimate as to the amount of cocaine